## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SUSAN STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  11-3162 |
| | ) | |
| DEWITT COUNTY, ILLINOIS, KATHY | ) | |
| WEISS, in her official and individual | ) | |
| capacities; ANDREW KILLIAN, in his | ) | |
| official and individual capacities; RYAN | ) | |
| BUEHNERKEMPER, in his official and | ) | |
| individual capacities; and DICK KORITZ, | ) | |
| in his official and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Motions to Dismiss filed by

Defendant Ryan Buehnerkemper (d/e 15) and Defendants DeWitt

County, Kathy Weiss, Andrew Killian, and Dick Koritz (de/ 23).

Following the dismissal with prejudice of state criminal charges

against her, Plaintiff sued Weiss, the former DeWitt County Circuit

Clerk, Illinois State Police Trooper Buehnerkemper, DeWitt County

State's Attorney Koritz, DeWitt County Assistant State's Attorney Killian, and DeWitt County.  Plaintiff brought three claims pursuant to 42 U.S.C. § 1983:  false arrest (Count I), false imprisonment (Count II), and malicious prosecution (Count IV).  She also brought one claim under state law for malicious prosecution (Count III).  For the reasons that follow, the federal claims (Counts I, II, and IV)are dismissed with leave to replead Counts I and II.  Plaintiff may replead her state law claim (Count III)  when she files her amended complaint.

However, Count IV is dismissed with prejudice because the Seventh Circuit does not recognize a § 1983 malicious prosecution claim where state law provides a remedy.  Plaintiff failed to state a claim against DeWitt County because Plaintiff did not allege the existence of a policy or custom that caused the violation of Plaintiff's constitutional rights.  Plaintiff also failed to state a claim against Defendant Weiss because Plaintiff did not allege any involvement by Defendant Weiss in Plaintiff's arrest, imprisonment, or prosecution.

The official capacity claims for damages against Defendants

Buehnerkemper, Koritz, and Killian are dismissed as barred by the
Eleventh Amendment and for the failure to allege the existence of a
policy or custom that caused the violation of Plaintiff's constitutional
rights.  Finally, the individual capacity claims against Defendants
Buehnerkemper, Koritz, and Killian, as alleged, are barred by absolute
immunity.

## I.  BACKGROUND

In June 2011, after this case was transferred to this Court from the
Southern District of Illinois, Plaintiff filed a Complaint containing four
counts: (1) a § 1983 claim for false arrest (Count I); (2) a § 1983 claim
for false imprisonment (Count II); (3) an Illinois state claim for malicious
prosecution (Count III); and (4) a § 1983 malicious prosecution claim
(Count IV).  Plaintiff alleged the following facts[1].

Between 1983 and 2007, Plaintiff was employed by the DeWitt

---

[1] Plaintiff argues numerous additional facts in her responses to the Motions to
Dismiss that are not contained in the Complaint.  The Court will not consider those
additional facts.  See, e.g., Montoro v. United States, 1994 WL 91937, at *2 (N.D.
Ill. 1994) ("It is axiomatic that a plaintiff cannot amend his complaint through a
memorandum in response to a motion to dismiss").

County Circuit Clerk's office as a Deputy Clerk/Bookkeeper.  From December 1, 1998 to December 1, 2008, Defendant Weiss was the Circuit Clerk for DeWitt County.

On March 23, 2007, Defendant Weiss terminated Plaintiff's employment "allegedly for the inability to adequately perform the assigned duties and responsibilities, gross negligence, the performance or lack of performance of assigned duties and responsibilities; [and] disregard for proper performance of assigned duties and responsibilities." (Cmplt. ¶ 10).  Plaintiff was prohibited from entering the DeWitt County Circuit Clerk's office except to conduct personal business and transactions.

Thereafter, DeWitt County and the Illinois State Police conducted an investigation into any improprieties allegedly committed by Plaintiff. On March 27, 2007, Defendant Killian contacted the Illinois State Police to request assistance concerning potential embezzlement by Plaintiff. Defendant Killian told the State Police that a cursory audit by Kayte Goodin of Goodin Associates, Ltd., had discovered a discrepancy of

approximately $80,000 in the books of the DeWitt County Circuit Clerk's office.

Thereafter, the firm of Mose, Yockey, Brown & Kull LLC performed an audit.  On June 1, 2007, Mose, Yockey, Brown & Kull LLC reported the results of the audit to the County Board members of DeWitt County.  The results of the audit indicated discrepancies between the computerized records and the handwritten or manually kept records of the DeWitt County Circuit Clerk's office.

On March 27, 2008, Defendant Killian convened a grand jury for the County of DeWitt.  Defendant Buehnerkemper, who was assisting with the investigation, testified.  During Defendant Buehnerkemper's direct examination by Defendant Killian, both Defendant Buehnerkemper and Defendant Killian stated that there had been a "forensic audit of the books" which indicated a large amount of money was missing and "that the loss indicated that Plaintiff . . . was responsible for the missing funds."  (Cmplt. ¶ 19).   At the request of Defendant Killian, the grand jury agreed to issue subpoenas for the bank, credit, and

debtor records of Plaintiff and her husband.

Plaintiff alleges that, despite the testimony at the grand jury proceedings, no forensic audit had ever been performed.  On August 1, 2008, Kent Kull, the accountant involved in the audit, admitted to a State Police investigator that he was not a forensic auditor and that a forensic audit had not taken place, nor had he been contracted to conduct a forensic audit in 2007.  Plaintiff also alleges that the lengthy investigation did not reveal any evidence that Plaintiff or her husband unlawfully obtained monies from DeWitt County.

On May 13, 2009, Plaintiff was interviewed by officers of the Illinois State Police.  On May 15, 2009, Plaintiff was charged with theft and official misconduct.  Plaintiff was arraigned and remanded to the custody of the Sheriff pending posting of bond.  Plaintiff posted bond on May 29, 2009.

On August 17, 2010, Defendant Koritz issued a press release indicating that the charges of official misconduct and theft were being dismissed with prejudice.  The press release indicated that no forensic

audit account of the books had been performed, as had been represented to the grand jury, and that there was no direct evidence Plaintiff committed a crime or was guilty of any wrongdoing.

Plaintiff alleges that at no time was there any evidence that Plaintiff committed a crime either prior to her being charged on May 15, 2009, or thereafter.  In her Complaint, Plaintiff seeks damages in excess of $100,000, punitive damages, costs of suit, and such other relief as the Court deems just and proper under the circumstances.

## II.  JURISDICTION AND VENUE

This Court has subject matter jurisdiction because Plaintiff's claims in Counts I, II, and IV are based on a federal statute.  See 28 U.S.C. § 1331.  The Court has jurisdiction over the remaining state claim in Count III pursuant to its supplemental jurisdiction.  See 28 U.S.C. § 1367(a).  Venue exists because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.  See 28 U.S.C. §1391(b) (a civil action where jurisdiction is not founded solely on diversity of citizenship may be brought in a judicial district where a

substantial part of the events or omissions giving rise to the claim

occurred).

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule Civil Procedure 12(b)(6)

permits dismissal of a complaint for "failure to state a claim upon which

relief can be granted."  Fed.R.Civ.P. 12(b)(6).  For purposes of the

motion, a court must accept as true all well-pleaded allegations contained

in the complaint and draw all inferences in the light most favorable to the

non-moving party.  Estate of Davis v. Wells Fargo Bank, 633 F.3d 529,

533 (7th Cir. 2011).  To avoid dismissal for failure to state a claim, the

complaint must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a).  That

statement must be sufficient to provide the defendant with "fair notice"

of the claim and its basis.  Tamayo v. Blagojevich, 526 F.3d 1074, 1083

(7th Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

(2007).  This means that (1) "the complaint must describe the claim in

sufficient detail to give the defendant 'fair notice of what the . . . claim is

and the grounds upon which it rests" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." <u>EEOC v. Concentra Health Services, Inc.</u>, 496 F.3d 773, 776 (7th Cir. 2007).  Plaintiff must provide more than "boilerplate allegations" to survive the motion to dismiss. <u>Eckert v. City of Chicago</u>, 2009 WL 1409707, at*6 (N.D. Ill. 2009).

## IV.  ANALYSIS

Plaintiff's Complaint contains three counts brought pursuant to 42 U.S.C. § 1983: false arrest (Count I); false imprisonment (Count II), and malicious prosecution, (Count IV).  The Complaint also contains a state law claim for malicious prosecution (Count III).  Defendants seek to dismiss all the claims on a number of grounds.

## A.    Count IV– § 1983 Malicious Prosecution Claim is Dismissed

Defendants argue that Plaintiff's federal malicious prosecution claim must be dismissed because the Seventh Circuit has held that an action for malicious prosecution under § 1983 fails as a matter of law if a state remedy exists.  Plaintiff argues she has stated a § 1983 malicious

prosecution claim.

Section 1983 "by itself does not protect anyone against anything . . . [It] does not provide any substantive rights at all." Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 617-618 (1979). "Section 1983 imposes liability for violations of rights protected by the Constitution." Baker v. McCollan, 443 U.S. 137, 146 (1979). Therefore, Plaintiff's § 1983 malicious prosecution claim must be based on some provision of the Constitution. Plaintiff's claim appears to be based on either the Fourth or Fourteenth Amendment.

However, the Seventh Circuit has held that a plaintiff generally cannot bring a § 1983 malicious prosecution claim when the state law provides a remedy:

> Federal courts are rarely the appropriate forum for malicious prosecution claims. We have previously stated that individuals do not have a "federal right not to be summoned into court and prosecuted without probable cause, under either the Fourth Amendment or the Fourteenth Amendment's Procedural Due Process Clause." Tully v. Barada, 599 F.3d 591, 594 (7th Cir.2010). See also Bielanski [v. County of Kane], 550 F.3d [632,] 638–42 [(7th Cir. 2008)] ("[T]he interest in not

> being prosecuted groundlessly is not an interest that the Fourth Amendment protects.") (internal citations omitted).  While we have also held that we will allow individuals to bring Section 1983 malicious prosecution suits when the relevant state's law does not provide them with a way to pursue such claims, <u>Newsome v. McCabe</u>, 256 F.3d 747, 750–51 (7th Cir.2001), Illinois law recognizes tort claims for malicious prosecution. See <u>Swick v. Liautaud</u>, 169 Ill.2d 504, 215 Ill.Dec. 98, 662 N.E.2d 1238, 1242 (1996). Hence, it was appropriate for the district court to refuse to hear Ray's claims and conclude that the appropriate venue for her claims is Illinois state court.

<u>Ray v. City of Chicago</u>, 629 F.3d 660, 664 (7th Cir. 2011), <u>cert.</u> <u>denied</u>, __ S. Ct. ___, 2011 4530176 (2011).  An exception to this general rule applies when a plaintiff alleges she has been denied a fair trial because the state failed to provide her with access to material exculpatory evidence. <u>Id.</u>  However, such a claim cannot be brought where, as here, "the individual is merely charged with a crime, but never fully prosecuted." <u>Id.</u>  Therefore, Count IV fails to state a claim.

**B.    Counts I and II –§ 1983 False Arrest and False Imprisonment Claims Are Dismissed**

To state a claim for false arrest, Plaintiff must allege that

Defendants arrested Plaintiff, Defendants did not have probable cause to arrest Plaintiff, and Defendants were acting under color of law.  <u>See Muczynski v. Lieblick</u>, 2010 WL 3328203, at *5 (N.D. Ill. 2010).  "A § 1983 false imprisonment claim seeks damages for injury caused by the plaintiff's detention without probable cause."  <u>National Casualty Co. v. McFatridge</u>, 604 F.3d 335, 344 (7th Cir. 2010).

Here, Plaintiff essentially alleges that probable cause did not exist to arrest and detain her because Defendants knew before they charged her that a forensic audit had not been conducted and the lack of a forensic audit was the basis for dismissing the charges.

"Liability under § 1983 must be premised on personal involvement in the deprivation of the constitutional right, not vicarious liability." <u>Payne for Hicks v. Churchich</u>, 161 F.3d 1030, 1042 n. 15 (7th Cir. 1998); <u>Wolf-Lillie v. Sonquist</u>, 699 F.2d 864, 869 (7th Cir. 1983) ("An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation") (emphasis in original).  However, a defendant need not directly participate in the

violation if (1) "she acts or fails to act with a deliberate and reckless disregard of [the] plaintiff's constitutional rights";  or (2) "the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir. 1986); see also Patterson v. Burns, 670 F.Supp.2d 837, 849 (S.D. Ind. 2009).

    1.    Plaintiff Fails to State a Claim Against Defendant Weiss

Defendant Weiss argues Plaintiff failed to state a § 1983 claim against her because Plaintiff does not allege any involvement by Defendant Weiss[2] in Plaintiff's arrest, imprisonment, or prosecution. Plaintiff responds by identifying additional facts, not contained in the Complaint, purporting to show Defendant Weiss's involvement in Plaintiff's arrest, detention, and prosecution.

Here, the only allegations contained in the Complaint specifically pertaining to Defendant Weiss are: (1) that Weiss was the County Clerk

---

[2] As County Clerk, Defendant Weiss was an elected official and not an employee of the County.  See Ruehman v. Village of Palos Park, 1992 WL 281352, at *2 (N.D. Ill. 1992) ("under state law, the Clerk of the Court is a state employee").

for DeWitt County from approximately December 1, 1998 to December 1, 2008 (Cmplt. ¶¶ 4, 9); (2) that Weiss was Plaintiff's supervisor (Cmplt. ¶ 9); and (3) Weiss terminated Plaintiff's employment for an alleged "inability to adequately perform the assigned duties and responsibilities; gross negligence, the performance and lack of performance of assigned duties and responsibilities; [and] disregard for proper performance of assigned duties and responsibilities" (Cmplt. ¶ 10).  None of these allegations support a § 1983 claim for false arrest or false imprisonment against Defendant Weiss.  However, based on Plaintiff's response to the motion to dismiss, Plaintiff may be able to state a claim against Defendant Weiss.  Therefore, the dismissal will be without prejudice with leave to replead.

    2.   <u>Defendant DeWitt County</u>

A local government is responsible under § 1983 "when execution of a government's policy or custom . . .  inflicts the injury."  <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 694 (1978).  Therefore, to state a claim against DeWitt County, Plaintiff

must allege an official policy or custom caused her injury.

To survive a motion to dismiss, a plaintiff is not required to plead with specificity the existence of a municipal policy.  See Eckert, 2009 WL 1409707, at *6.  However, the allegations must be specific enough to place defendants on notice of the type of policy alleged.  Id.; see also Bell Atlantic Corp., 550 U.S. at 555 (allegations must provide the defendant with "fair notice"of the claim).  A plaintiff may establish an official policy or custom by showing:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

Palmer v. Marion County, 327 F.3d 588, 594-95 (7th Cir. 2003) (citations omitted).

Here, Plaintiff alleged only that Defendants, including DeWitt County, acted by custom, policy, and practice to deny Plaintiff's rights.  Plaintiff does not allege the existence of a policy or identify the type of

policy she alleges existed.  See, e.g., Eckert, 2009 WL 1409707, at *6

(finding allegation sufficient where the plaintiff "alleged the existence of a

policy and explained that the policy was one of 'failing to provide

reasonable medical attention'").  Plaintiff's boilerplate allegation does

nothing to put DeWitt County on notice of what it might have done to

violate Plaintiff's constitutional rights.  See, e.g., Brooks v. Ross, 578

F.3d 574, 582 (7th Cir. 2009) (finding that the plaintiff failed to state a

plausible claim under § 1983 where the allegation was "merely a

formulaic recitation of the cause of action and nothing more" and did not

put the defendants on notice of what they might have done to violate the

plaintiff's rights); Nevinger v. Town of Goodland, Ind., 2011 WL

2694662, at *5 (N.D. Ind. 2011) ("even under the liberal notice-pleading

standard of the federal rules, the Complaint must still contain direct or

inferential allegations with respect to all material elements of a Monell

claim").  Therefore, the claim against DeWitt County is dismissed but

without prejudice and with leave to replead.

3.   <u>The Official Capacity Claims Against Defendants
     Buehnerkemper, Koritz, and Killian Are Dismissed</u>

Defendant Buehnerkemper argues the official capacity claim

brought against him is barred by the Eleventh Amendment.  Defendants

Koritz and Killian also argue Plaintiff failed to state a claim against them

in their official capacity.

a.   **The Official Capacity Claim Against Defendant
     Buehnerkemper is Dismissed**

Defendant Buehnerkemper argues that the official capacity claim

against him is barred by the Eleventh Amendment.  Buehnerkemper

asserts that as a state official (Illinois State Police officer), Plaintiff

cannot seek money damages against him in his official capacity.

A suit against a state official in his official capacity is a suit against

the State.  <u>Power v. Summers</u>, 226 F.3d 815, 818 (7th Cir. 2000).  A suit

against the State, or state official in his official capacity, is barred by the

Eleventh Amendment unless: (1) Congress has abrogated the State's

immunity from suit, (2) a State has waived its immunity and consented

to suit, or (3) the suit is one for prospective injunctive relief pursuant to

Ex Parte Young, 209 U.S. 123, 15-60 (1908).  Sonnleitner v. York, 304

F.3d 704, 717 (7th Cir. 2002).  Plaintiff does not argue that Congress

abrogated the State's immunity from suit or that the State waived its

immunity and consented to suit.  Moreover, Plaintiff seeks only money

damages against Buehnerkemper in his official capacity so the suit is not

one for prospective injunctive relief.  Therefore, the official capacity claim

against Trooper Buehnerkemper is dismissed.

### b.    The Official Capacity Claims Against Defendants Killian and Koritz Are Dismissed

Defendants Killian and Koritz argue that the official capacity claims

against them are effectively claims against the State's Attorney's office.

As such, Defendants Killian and Koritz argue, Plaintiff was required to,

but failed to, allege an official policy or custom that caused the alleged

constitutional violation.  See Eckert, 2009 WL 1409707, at *4 ("a claim

against an officer in his or her official capacity must satisfy the standards

set out in Monell").  For the reasons stated above regarding DeWitt

County, this Court finds that Plaintiff has failed to allege an official

policy or custom against the State's Attorney's office.   The official

capacity claims against Killian and Koritz are therefore dismissed.

The Court will not grant leave to amend, however, because the claims against Defendants Killian and Koritz in their official capacity are also barred by the Eleventh Amendment.  See Hernandez v. Joliet Police Dept., 197 F.3d 256, 265 (7th Cir. 1999) ("the Illinois Supreme Court has held that state's attorneys are state officials" and the Eleventh Amendment barred suit against the State's Attorney's Office); McGrath v. Gillis, 44 F.3d 567, 571 (7th Cir. 1995) (assistant state's attorneys in Illinois are officials of the state for purposes of Eleventh Amendment); Manos v. Caira, 162 F.Supp.2d 979, 987 (N.D. Ill. 2001).

4.    The Individual Capacity Claims against Defendants Buehnerkemper, Killian, and Koritz Are Dismissed

Defendants Buehnerkemper, Koritz, and Killian also seek to dismiss the individual capacity claims brought against them in Count I (false arrest) and Count II (false imprisonment).

a.    The Individual Capacity Claim Against Defendant

## Buehnerkemper is Dismissed

In her Complaint, Plaintiff alleged that Defendant Buehnerkemper assisted in the investigation of the DeWitt County Circuit Clerk's office and Plaintiff.  (Cmplt. ¶ 18).  Plaintiff also alleged Defendant Buehnerkemper testified before the grand jury and stated there had been a "'forensic audit of the books' of DeWitt County indicating there was a large amount of money which was missing and that the loss indicated that Plaintiff . . . was responsible for the missing funds."  (Cmplt. ¶ 19). Plaintiff further alleged that a forensic audit had not, in fact, been performed.  (Cmplt. ¶10).  The grand jury thereafter issued subpoenas for bank, creditor, and debtor records belonging to Plaintiff and her husband.  (Cmplt. ¶ 20).

Defendant Buehnerkemper argues the § 1983 causes of action against him in his individual capacity should be dismissed because his grand jury testimony is protected by absolute immunity.  Plaintiff argues a question of fact exists whether her arrest warrant was obtained through Defendant Buehnerkemper's false testimony and/or omission of material

facts.

Plaintiff's Complaint contains no allegations regarding an arrest warrant or that Defendant Buehnerkemper arrested Plaintiff.  Plaintiff's Complaint does, however, essentially allege that because of Defendant Buehnerkemper's grand jury testimony, subpoenas were obtained and, after a lengthy investigation, no evidence was found that Plaintiff or her husband unlawfully obtained any money from DeWitt County. "Police officers testifying before a grand jury are entitled to absolute immunity from liability under § 1983." Sattler v. Hernandez,  2011 WL 3839658, at *5 (N.D. Ill. 2011); see also Briscoe v. LaHue, 460 U.S. 325, 354 (1983) (a witness at trial has absolute immunity from suit under § 1983 for giving false testimony); Kincaid v. Eberle, 712 F.2d 1023, 1024 (7th Cir. 1983) (extending Briscoe to immunize grand jury witnesses).

While certain exceptions to this absolute immunity exist, Plaintiff has not alleged facts from which an inference can be drawn that Plaintiff's claim falls within the various exceptions.  For instance, had

Plaintiff alleged that Defendant Buehnerkemper arrested her based on an

arrest warrant he knew was improperly obtained, she might have stated a

claim for false arrest.  See, e.g., Juriss v. McGowan, 957 F.2d 345, 348

(1992) (although the officer was immune from liability for his testimony

before the grand jury, the plaintiff also alleged that the officer executed

the arrest; the officer was not entitled to absolute immunity for executing

a warrant that issued from the indictment returned by the grand jury that

the officer himself allegedly misled).  Similarly, had Plaintiff alleged that

Buehnerkemper's allegedly perjured testimony led the grand jury to

return an indictment, she may have stated a claim.   Pressley v.

Brownfield, 1994 WL 702648, at *3 (N.D. Ill. 1994) (finding that the

detective was absolutely immune for the claim that he lied to the grand

jury but denying motion to dismiss claim that the detective's perjury

caused the grand jury to return an indictment that was not based on

probable cause because if the detective lied to the jury to obtain the

indictment, he was liable for the continued confinement and

prosecution), opinion clarified in 1005 WL 38968 (N.D. Ill. 1995).  Of

course, the problem with those theories is that Plaintiff alleges that,

based on Defendant Buehnerkemper's testimony, the grand jury issued

subpoenas for records belonging to Plaintiff, records which Plaintiff

alleges did not show she or her husband had unlawfully obtained money

from DeWitt County.  She does not allege that the grand jury returned

an indictment based on Defendant Buehnerkemper's testimony.  It is

unclear whether Plaintiff is alleging that the subpoenas issued violated

her constitutional rights.  <u>But</u> <u>see</u>, <u>e.g.</u>, <u>United States v. R. Enterprises,</u>

<u>Inc.</u>, 498 U.S. 292, 297 (1991) ("the Government cannot be required to

justify the issuance of a grand jury subpoena by presenting evidence

sufficient to establish probable cause because the very purpose of

requesting the information is to ascertain whether probable cause

exists").

Nor does Plaintiff allege that Defendant Buehnerkemper was a

complaining witness who is not entitled to absolute immunity.  An

individual  is a complaining witness if he played a sufficient role in

initiating the prosecution–and merely providing false testimony to a

grand jury is not enough.  <u>Cervantes v. Jones</u>, 188 F.3d 805, 810 (7th Cir.

1999), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>in</u> <u>Newsome v. McCabe</u>, 256 F.3d

747, 751 (7th Cir. 2001); <u>see also</u>  <u>Averhart v. City of Chicago</u>, 114 Fed.

Appx. 246, at *3 (7th Cir. 2004) (affirming district court's dismissal of §

1983 claim against the officer based on his alleged perjury, noting that

while the plaintiff argued the officer should be classified as a complaining

witness, the plaintiff's argument did not describe the officer's actions as

similar to "'police officers who [push] aggressively for a prosecution'"),

<u>quoting</u> <u>Gauger v. Hendle</u>, 349 F.3d 354, 358 (7th Cir. 2003), <u>overruled</u>

<u>in</u> <u>part</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Wallace v. City of Chicago</u>, 440 F.3d 421,

423 (7th Cir. 2006).  Although Plaintiff is not required to allege extensive

facts, she must plead sufficient facts to put Defendants on notice of the

claims against them.  <u>See</u> <u>Beaman v. Souk</u>, 2011 WL 832506, at *7

(C.D. Ill. 2011) (finding the plaintiff failed to allege facts that would lead

to the conclusion that "these particular [d]efendants . . .  were plausibly

connected with the investigation into Doe and that they had access to

the evidence that was allegedly withheld from Plaintiff").  Plaintiff failed

to put Defendant Buehnerkemper on notice here.

Plaintiff does allege Defendant Buehnerkemper was involved in the investigation.  However, she does not allege any wrongdoing by Defendant Buehnerkemper regarding the investigation.  In fact, Plaintiff alleges that the investigation revealed no evidence that Plaintiff committed a crime.  See, e.g., Pressley, 1994 WL 702648, at *4 (dismissing claim that the police officer failed to adequately investigate the murder, noting that "[t]he Constitution does not guarantee that only the guilty will be arrested").

Finally, Plaintiff argues, citing Hammond v. Kunnard, 148 F.3d 692, 696 (7th Cir. 1998), that her claims for false imprisonment and false arrest should not be dismissed where the allegation of false testimony is only part of Plaintiff's broader claims.  In Hammond, the Seventh Circuit found:

> [T]he complaint focuses on the defendants'
> actions prior to the prosecutor's decision to take
> the case to the grand jury, not on their actual
> testimony on the matter.  Since it appears that the
> allegation that the defendants presented false
> evidence to the grand and petit juries is only part

and parcel of Hammond's broader claims, the
district court did not err in denying the
defendants' motions.

Id.

In contrast, here, Plaintiff has not alleged any other action by
Defendant Buehnerkemper other than: (1) the allegedly false testimony
before the grand jury leading to the issuance of subpoenas and (2) that
he was involved in the investigation but without any allegations of
wrongdoing as part of the investigation.  Defendant Buehnerkemper is
entitled to absolute immunity on the claim pertaining to his allegedly
false testimony before the grand jury.  See, e.g., Montoro v. U.S., 1994
WL 91937, at *3 (N.D. Ill. 1994) (dismissing false arrest claim because
the officer was "absolutely immune from liability for his grand jury
testimony and the Complaint [did] not allege that he participated in the
arrest).  However, it is possible Plaintiff could state a claim against
Defendant Buehnerkemper based on other conduct by him.  Therefore,
the Court grants Plaintiff leave to amend Counts I and II as to Defendant
Buehnerkemper in his individual capacity.

### b.     Individual Capacity Claims Against Defendants Koritz and Killian Are Dismissed

Defendants Koritz, the DeWitt County State's Attorney, and

Killian, a DeWitt County Assistant State's Attorney, argue that the §

1983 claims against them in their individual capacities are barred by

absolute immunity.

A prosecutor is immune from a civil suit for damages when

"initiating a prosecution" and "presenting the State's case."  Imbler v.

Pachtman, 424 U.S. 409, 431 (1976).  This immunity exists even where

the charges are initiated maliciously, without probable cause, or on the

basis of false testimony or evidence.  Henry v. Farmer City State Bank,

808 F.2d 1228, 1238 (7th Cir. 1986).   "If a prosecutor's function is

judicial or quasi-judicial, he is entitled to absolute immunity from suit,

but if the function was administrative or investigatory, he is only entitled

to qualified immunity."  Anderson v. Simon, 217 F.3d 472, 475 (7th Cir.

2000) (citing Spiegel, 121 F.3d at 257-58 (a prosecutor is absolutely

immune for determining whether charges should be brought)).

In her Complaint Plaintiff alleges the State's Attorney's office knew

from at least August 1, 2008 that a forensic audit had not been

performed "but still decided to prosecute the Plaintiff for the

aforementioned crimes."  (Cmplt. ¶ 24).  She further alleges that at no

time did any evidence develop indicating that Plaintiff committed any

crime.  (Cmplt. ¶ 25).  Although the only allegations against Koritz are

that he dismissed the charges and issued a press release regarding the

dismissal of the charges (see Cmplt. ¶ 22), a reasonable inference can be

drawn that Koritz made the decision to bring charges and/or continue the

prosecution against Plaintiff.  See, e.g., Spiegel, 121 F.3d at 256 ("Under

Illinois law, the State's Attorney, as a member of the executive branch of

government, is vested with exclusive discretion in the initiation and

management of a criminal prosecution").  Because a prosecutor is

immune from damages under § 1983 for initiating and continuing a

prosecution, Plaintiff's claim against Defendant Koritz is dismissed.  See

Davis v. Zirkelbach, 149 F.3d 614, 617 (7th Cir. 1998) (prosecutors

entitled to absolute immunity for their decision to commence and

continue prosecution).  However, the Court will grant Plaintiff leave to

amend Counts I and II as to Defendant Koritz in his individual capacity if she can allege wrongful conduct by him that is of an investigatory or administrative nature.

Defendant Killian is also entitled to absolute immunity to the extent that Plaintiff alleges he improperly initiated charges against her and continued the prosecution.  However, Plaintiff also argues in her response to the motion to dismiss that Killian engaged in wrongful conduct in his capacity as an investigator.  Plaintiff argues "Killian therefore was involved in the investigation, knew there was no forensic audit and certainly no probable cause, but still put Buehnerkemper on the stand to say that one had been conducted."

A prosecutor is entitled to absolute immunity for his conduct before a grand jury.  See Beaman, 2011 WL 832506, at *8 (allegations that the defendants "deliberately suppressed exculpatory evidence before the grand jury, at trial, or during the judicial phase and while functioning in a prosecutorial capacity, they are entitled to absolute immunity").  "Prosecutors are entitled to absolute immunity for actions as advocates

before the grand jury and at trial even if they present unreliable or wholly

fictitious proofs." Buckley v. Fitzsimmons, 20 F.3d 789, 795 (7th Cir.

1994). The parties do not address whether the fact that the grand jury

was used in an investigatory manner–to obtain subpoenas–and not to

obtain an indictment affects the function analysis. See, e.g., Lawlor v.

Connelly, 2011 WL 1740178 (D. Conn. 2011) (prosecutor was entitled

to absolute immunity for his actions before an investigative grand jury).

　　In response to the Motion to Dismiss, Plaintiff argues that

Defendant Killian knew that no forensic audit had been performed but

still put Defendant Buehnerkemper on the stand before the grand jury to

say that one had been conducted. She did not allege this in the

Complaint and actually alleged in the Complaint that the State's

Attorney's Office learned five months later that a forensic audit had not

been performed. Whether such claim, had it been alleged, would be

viable is debatable. See, e.g., Rehberg v. Paulk, 611 F.3d 828, 840

(holding that prosecutors were "entitled to absolute immunity for pre-

indictment conduct of conspiring to make up and present . . . false

testimony to the grand jury"; court specifically noted plaintiff did not

allege a particular discrete item of physical or expert evidence that was

falsely created during the investigative stage to link the accused to a

crime), <u>cert.</u> <u>granted</u> 131 S. Ct. 1678 (11th Cir. 2011).

Plaintiff does allege that Killian was involved in the investigation.

Activities that are administrative in nature or investigatory are not

entitled to absolute immunity.  <u>See</u> <u>Burns v. Reed</u>, 500 U.S. 478, 493-94

(1991).  For example, in <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 272

(1993), the petitioners argued "the prosecutors were not entitled to

absolute immunity for the claim that they conspired to manufacture false

evidence that would link [petitioner's] boot with the bootprint the

murderer left on the front door."  The petitioners asserted that the

prosecutors "shopped for experts until they found one who would provide

the opinion they sought" and worked "hand in hand" with the police.  <u>Id.</u>

The  United States Supreme Court found that the prosecutors were not

functioning as advocates but as investigators.  <u>Id.</u> at 274.  In particular,

the Court noted that the prosecutors did not argue they had probable

cause to arrest petitioner or to initiate judicial proceedings during the period they were trying to determine whether the bootprint at the scene had been made by the petitioner and their actions occurred well before they could properly claim to be acting as advocates.  Id. at 275.

In contrast here, Plaintiff does not allege what conduct Defendant Killian engaged in as an investigator that violated her constitutional rights.  Plaintiff alleges Killian was involved in the investigation, but also alleges that the investigation revealed no evidence that Plaintiff committed a crime.  Plaintiff's claim is essentially that Killian wrongfully prosecuted her when there was no evidence that a crime had been committed or that she had committed a crime.  The decision to prosecute and continue the prosecution is protected by absolute immunity.

However, Plaintiff may be able to state a claim against Killian in his individual capacity that is not barred by absolute immunity.  Therefore, Plaintiff is granted leave to amend.

## C.    Plaintiff May Replead Her State Law Claim

Because the federal claims have been dismissed, the Court declines

to exercise supplemental jurisdiction over the state law claim at this time.

See Sanderson v. Brugman, 2001 WL 699876 at *9 (S.D. Ind. 2001)

(taking no action on the motion to dismiss the state law claims where the

federal claims had been dismissed with leave to replead, noting that the

court would decide whether to exercise supplemental jurisdiction once

final resolution was reached on the federal claims).  However, if Plaintiff

repleads with respect to the federal claims, Plaintiff may also replead the

state law claim.

## V.  CONCLUSION

For the reasons stated above, the Motions to Dismiss filed by

Defendant Ryan Buehnerkemper (d/e 15) and Defendants DeWitt

County, Kathy Weiss, Andrew Killian, and Dick Koritz (de/ 23) are

GRANTED.  Count IV is DISMISSED WITH PREJUDICE.  Counts I

and II are DISMISSED WITHOUT PREJUDICE and with leave to

replead, at which time Plaintiff may also replead Count III.  Plaintiff shall

file an Amended Complaint on or before October 31, 2011. Defendants

shall answer or otherwise plead on or before November 14, 2011.  If

Plaintiff does not replead, this Court will enter an order dismissing

Counts I and II with prejudice and declining to exercise supplemental

jurisdiction over the state law claim.

ENTER: October 17, 2011

FOR THE COURT:

                              _____s/Sue E. Myerscough_____
                                  SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE