## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SUSAN STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-3162 |
| | ) | |
| DEWITT COUNTY, ILLINOIS, KATHY | ) | |
| WEISS, in her official and individual | ) | |
| capacities; ANDREW KILLIAN, in his | ) | |
| individual capacity; RYAN | ) | |
| BUEHNERKEMPER, in his individual | ) | |
| capacity; and DICK KORITZ, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Motion to Dismiss filed by

Defendants DeWitt County, Kathy Weiss, Andrew Killian, and Dick

Koritz (de/ 31).

Following the dismissal with prejudice of state criminal charges

against her, Plaintiff sued former DeWitt County Circuit Clerk Weiss,

DeWitt County State's Attorney Koritz, DeWitt County Assistant State's Attorney Killian, and DeWitt County. Plaintiff also sued Ryan Buehnerkemper, a state trooper, who has filed his own motion to dismiss. Plaintiff brought three claims pursuant to 42 U.S.C. § 1983: false arrest (Count I), false imprisonment (Count II), and malicious prosecution (Count IV). She also brought one claim under state law for malicious prosecution (Count III).

In October 2011, this Court dismissed Count IV with prejudice and dismissed Counts I and II without prejudice and with leave to replead Counts I, II, and III. On October 31, 2011, Plaintiff filed an Amended Complaint. Defendants have filed motions to dismiss.

For the reasons that follow, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT

The Amended Complaint contains the following allegations. Between 1983 and 2007, Plaintiff was employed by the DeWitt County Circuit Clerk's office as a Deputy Clerk/Bookkeeper. From December 1,

1998 until December 1, 2008, Defendant Weiss was the Circuit Clerk for DeWitt County. When Defendant Weiss retired from her position, she supported Lori Berger as her successor for the elected position of DeWitt County Circuit Clerk.

Plaintiff alleges that in March 2007, shortly after she told fellow employees she had an interest in a candidacy for County Clerk of DeWitt County in the next election, Defendant Weiss terminated Plaintiff's employment. The termination was "due to an alleged discrepancy between the written account and computer account being implemented" in the office. Amd. Cmplt. ¶ 10. Plaintiff was merely one of several employees who had access to the books and financial records of the clerk's office.

Thereafter, at the request of Defendant Weiss, Defendant "Killian (later under the direction of State's Attorney Koritz) initiated and conducted an investigation into the discrepancy in the two figures." Amd. Cmplt. ¶ 11. Weiss and Killian maintained involvement in the investigation.

Plaintiff alleges that prior to her being criminally charged, both DeWitt County and the Illinois State Police conducted an investigation into any improprieties allegedly committed by Plaintiff. Plaintiff also alleges that "[d]uring the course of the investigation, Defendants Kortiz and Killian ran against one another in the Republican primary for the office of State's Attorney in 2008" and that "Koritz won the nomination and, ultimately, the office." Amd. Cmplt. ¶ 15.

In March 2007, Killian asked the Illinois State Police for assistance concerning a potential embezzlement by Plaintiff, indicating that a cursory audit performed by Katye Goodin of Goodin Associates, Ltd. had discovered an $80,000 discrepancy between the handwritten books and the new computer system. Thereafter, at the request of Killian, the firm of Mose, Yockey, Brown & Kull LLC performed an audit. On June 1, 2007, Mose, Yockey, Brown & Kull LLC reported the results of the audit to the County Board members of DeWitt County. The results of the audit indicated discrepancies existed between the computerized records and the handwritten or manually kept records of the DeWitt County

Circuit Clerk's office. According to Plaintiff, the "cursory audit did not determine which records were correct, whether there was any money missing whatsoever, or whether there were mere bookkeeping errors." Amd. Cmplt. ¶ 18. Plaintiff alleges, however, that three months before Plaintiff's scheduled criminal trial, approximately $125,000 was found in a bond account. Amd. Cmplt. ¶ 18.

On March 27, 2008, Killian convened a grand jury for the County of DeWitt. Defendant Buehnerkemper, the lead investigator in the investigation of Plaintiff, testified. During Defendant Buehnerkemper's direct examination by Defendant Killian, both Defendant Buehnerkemper and Defendant Killian stated that there had been a "forensic audit of the books" which indicated a large amount of money was missing and "that the loss indicated that [Plaintiff] . . . was responsible for the missing funds." Amd. Cmplt. ¶ 22. Plaintiff alleges, however, that no forensic audit had been performed. At the request of Defendant Killian, the grand jury agreed to issue subpoenas for the bank, credit, and debtor records of Plaintiff and her husband.

After a lengthy investigation, no credible evidence was found that Plaintiff or her husband had unlawfully obtained any monies from DeWitt County. Defendants nonetheless continued their investigation.

On August 1, 2008, Kent Kull, the accountant involved in the audit, admitted to a State Police investigator that he was not a forensic auditor and that no forensic audit had taken place. The Illinois State police interviewed the previous accountant who had done several audits of the Circuit Clerk's office over a multi-year period and that accountant told the officer that "if there had been anywhere near the amount of money missing that they had alleged, it certainly would have become apparent and he would have found it during his audits." Amd. Cmplt. ¶ 30.

On May 13, 2009, Plaintiff was interviewed by the Illinois State Police, and no incriminating information was revealed. On May 15, 2009, Plaintiff was charged in state court with theft of $114,721.03 and official misconduct. See 720 ILCS 5/16-1(a)(1)(A) (West 2006); 720 ILCS 5/33-3(b) (West 2006). Koritz, with the knowledge and consent of

all Defendants, made the decision to bring the charges and/or continue the investigation.

Defendant Buehnerkemper and other officers arrested Plaintiff. The arrest was authorized by Defendant Koritz. Plaintiff does not allege that she was arrested pursuant to an arrest warrant. Plaintiff alleges there was no probable cause for her arrest because there was no credible evidence she was criminally culpable or that any money was missing.

On May 15, 2009, Plaintiff was arraigned and remanded to the custody of the Sheriff pending posting of bond. Plaintiff posted bond on May 29, 2009.

On August 17, 2010, on the eve of trial, Defendant Koritz issued a press release indicating that the charges of official misconduct and theft were being dismissed with prejudice. The press release indicated that no forensic accounting of the books had been performed, as had been represented to the grand jury, and that there was no direct evidence Plaintiff committed a crime or was guilty of any wrongdoing.

Plaintiff alleges that at no time was there any evidence that Plaintiff

committed a crime either prior to her being charged on May 15, 2009, or thereafter.  Plaintiff further alleges that "Defendants for years failed to disclose material, exculpatory facts that there was no evidence of wrongdoing by [Plaintiff], and that there was no evidence that there was money actually missing."

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  For purposes of the motion, a court must accept as true all well-pleaded allegations contained in the complaint and draw all inferences in the light most favorable to the non-moving party.  Estate of Davis v. Wells Fargo Bank, 633 F.3d 529, 533 (7th Cir. 2011).  To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis.  Tamayo v. Blagojevich, 526 F.3d

1074, 1083 (7th Cir. 2008); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests'" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level."  <u>E.E.O.C. v. Concentra Health Services, Inc.</u>, 496 F.3d 773, 776 (7th Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 555); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

## III.  ANALYSIS

Plaintiff's Complaint contains three counts:  false arrest (Count I); false imprisonment (Count II), and a state law claim for malicious prosecution (Count III).  The claims are brought against DeWitt County, Weiss (in her individual and official capacity), Killian (in his individual capacity), and Koritz (in his individual capacity).  Defendants Weiss,

Killian, Koritz, and DeWitt County seek to dismiss all the claims on a number of grounds.

## A.    COUNTS I AND II: FALSE ARREST AND FALSE IMPRISONMENT

In Counts I and II, the § 1983 false arrest and false imprisonment counts, Plaintiff alleges, in addition to the allegations set forth above, that Defendants: (1) deprived Plaintiff of her liberty without due process of law by arresting her, taking her into custody, and holding her against her will; (2) made an unreasonable search and seizure of Plaintiff's property without due process of law; (3) conspired for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff equal protection of the laws; and (4) refused or neglected to prevent such deprivations, thereby depriving Plaintiff of her rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution.

To prove a claim under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of law deprived her of a federal right. Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001). "Liability under § 1983 must be premised on personal involvement in the

deprivation of the constitutional right, not vicarious liability." <u>Payne for</u>

<u>Hicks v. Churchich</u>, 161 F.3d 1030, 1042 n. 15 (7th Cir. 1998).

However, a defendant need not directly participate in the violation if (1)

"she acts or fails to act with a deliberate and reckless disregard of [the]

plaintiff's constitutional rights";  or (2) "the conduct causing the

constitutional deprivation occurs at her direction or with her knowledge

and consent."  <u>Rascon v. Hardiman</u>, 803 F.2d 269, 274 (7th  Cir. 1986).

To state a § 1983 claim for false arrest, Plaintiff must allege that

Defendants arrested Plaintiff, without probable cause, and while acting

under color of law.  <u>See</u> <u>Muczynski v. Lieblick</u>, 2010 WL 3328203, at *5

(N.D. Ill. 2010).  "A § 1983 false imprisonment claim seeks damages for

injury caused by the plaintiff's detention without probable cause."

<u>National Cas. Co. v. McFatridge</u>, 604 F.3d 335, 344 (7th Cir. 2010).

In her Amended Complaint, Plaintiff essentially alleges that

probable cause did not exist to arrest and detain her because Defendants

knew before they arrested her (or caused her to be arrested) and charged

her (or caused her to be charged) that a forensic audit had not been

conducted and the lack of a forensic audit was the basis for dismissing the charges.

   1.  Counts I and II Against DeWitt County are Dismissed

Defendants argue Plaintiff's Amended Complaint fails to state a claim against DeWitt County because Plaintiff failed to set forth sufficient facts demonstrating a policy, practice, or custom violating a Constitutional right.  Plaintiff argues she has alleged sufficient facts because she alleged the County acted by custom, policy, and practice of charging, arresting, and prosecuting individuals without probable cause.

A local government is responsible under § 1983 "when execution of a government's policy or custom . . .  inflicts the injury."   Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978).  To survive a motion to dismiss, a plaintiff is not required to plead with specificity the existence of a municipal policy.  See Eckert v. City of Chicago, 2009 WL 1409707, at *6 (N.D. Ill. 2009).  However, the allegations must be specific enough to place defendants on notice of the type of policy alleged.  Id.; see also Bell Atlantic Corp., 550 U.S. at

555 (allegations must provide the defendant with "fair notice"of the claim).  A plaintiff may establish an official policy or custom by showing:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

Palmer v. Marion County, 327 F.3d 588, 594-95 (7th Cir. 2003) (citations omitted).

Here, Plaintiff alleges she was arrested by Defendant Buehnerkemper, a state trooper, "and other officers."  Amd. Cmplt. ¶ 27. Plaintiff has not alleged she was arrested by a DeWitt County police officer.  Plaintiff has not alleged any custom, policy, or practice of DeWitt County that is connected to Plaintiff's alleged injury.  Plaintiff's boilerplate allegation does nothing to put DeWitt County on notice of what it might have done to violate Plaintiff's constitutional rights.  See, e.g., Brooks v. Ross, 578 F.3d 574, 582 (7th Cir. 2009) (finding that the plaintiff failed to state a plausible claim under § 1983 where the allegation was "merely a formulaic recitation of the cause of action and

nothing more" and did not put the defendants on notice of what they might have done to violate the plaintiff's rights); <u>Nevinger v. Town of Goodland, Ind.</u>, 2011 WL 2694662, at *5 (N.D. Ind. 2011) ("even under the liberal notice-pleading standard of the federal rules, the Complaint must still contain direct or inferential allegations with respect to all material elements of a <u>Monell</u> claim").

Plaintiff does not argue, with regard to her <u>Monell</u> claim, that the County is liable on the ground that the constitutional injury was caused by a County decision maker with final policy-making authority.  <u>See</u> Response, p. 21-22.  Nor would this Court find such an argument persuasive.

State's Attorneys and the Clerks of the Circuit Courts are state officials not county officials, and assistant state's attorney lack the authority to establish binding county policy.  <u>See</u> <u>Stokes v. City of Chicago</u>, 660 F.Supp. 1459, 1463 (N.D. Ill. 1987) (State's Attorneys and assistant State's Attorneys are not policymakers for the County "because the prosecutor acts on behalf of the state . . . when prosecuting criminal

cases); <u>Drury v. McLean County</u>, 89 Ill. 2d 417, 420 (1981) (the circuit court clerk is a state officer, not a county officer). Moreover, when the State's Attorney "investigated, charged and prosecuted" an individual, the State's attorney was acting on behalf of the State. <u>National Cas. Co. v. McFatridge</u>, 604 F.3d 335, 340-41 (7th Cir. 2010) (noting that a State's Attorney acts as an agent for the county when "representing county officers in suits brought against them or on their behalf"). Therefore, Plaintiff's § 1983 claims against DeWitt County are dismissed. <u>See</u> <u>Guzman v. Sheahan</u>, 495 F.3d 852, 859 (7th Cir. 2007) ("Municipal policies can be formulated only by the official charged under state law with the authority and responsibility for acting as the final policymaker in the area of governance in question"); <u>Neptune Fireworks Co., Inc. v. Ahern</u>, 1995 WL 11395, at *4 (N.D. Ill. 1995) (dismissing claims against the County where none of the individuals were under the control or supervision of the County).

## 2. Claims Against Defendant Weiss in her Official Capacity is Dismissed

Defendant Weiss seeks dismissal of the official capacity claims against her. Defendant Weiss argues that as an elected official, she cannot be sued for damages in her official capacity under § 1983 because such suit would essentially be a suit against the State. Plaintiff argues only that the State of Illinois is not the real party in interest. Alternatively, Plaintiff argues that if the official capacity claim fails, the suit against Defendant Weiss in her individual capacity should stand.

A claim brought against an officer in her official capacity is treated as a suit against the government entity of which an officer is an agent. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Therefore, a claim for damages against a state official in her official capacity is actually a claim against the State, which is barred by the Eleventh Amendment. See Scott v. O'Grady, 975 F.2d 366, 370 (7th Cir. 1992) (further noting that the "Eleventh Amendment bar ' does not extend to counties and similar municipal corporations'") (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977)).

Defendant Weiss, as the Circuit Clerk of DeWitt County, was a state official for Eleventh Amendment purposes.  See <u>Drury</u>, 89 Ill. 2d at 420  (circuit court clerk is a state officer, not a county officer); <u>Carpenter v. Brown</u>, 2011 WL 6936360, at *1 (N.D. Ill. 2011) (finding that Clerk of the Circuit Court of Cook County was a state official and the "Eleventh Amendment thus applies and bars any claim for damages against Defendant in her official capacity); <u>Eckardt v. Clerk of Circuit Court of Tenth Judicial  Circuit of Illinois</u>, 2011 WL 5118768, at *2 (C. D. Ill. 2011).  Therefore, the official capacity claim against Defendant Weiss, which seeks only damages, is dismissed.

3.  <u>Defendants Killian and Koritz are Entitled to Absolute Immunity</u>

Defendants Killian and Koritz assert the § 1983 claim against them is barred by absolute immunity.  This Court agrees.

A prosecutor is immune from a civil suit for damages when "initiating a prosecution" and "presenting the State's case."  <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431 (1976).  This immunity exists even where the charges are initiated maliciously, without probable cause, or on the

basis of false testimony or evidence.  Henry v. Farmer City State Bank, 808 F.2d 1228, 1238 (7th Cir. 1986).

Whether "an action falls within the scope of [a prosecutor's] prosecutorial duties depends upon its function." Fields v. Wharrie, ____ F.3d ____, 2012 WL 614714, at *3 (7th Cir. 2012).  "The analysis hinges on whether the prosecutor is, at the time, acting as an officer of the court, as well as on his actions' relatedness to the judicial phase of the criminal process." Id.  "If a prosecutor's function is judicial or quasi-judicial, he is entitled to absolute immunity from suit, but if the function was administrative or investigatory, he is only entitled to qualified immunity." Anderson v. Simon, 217 F.3d 472, 475 (7th Cir. 2000) (citing Spiegel v. Rabinovitz, 121 F.3d 251, 257-58 (7th Cir. 1997) (a prosecutor is absolutely immune for determining whether charges should be brought)).

Defendants Killian and Koritz are absolutely immune for initiating and maintaining the prosecution against Plaintiff.  Imbler, 424 U.S. at 431 ("in initiating a prosecution and in presenting the State's case, the

prosecutor is immune from a civil suit for damages under § 1983");  See Davis v. Zirkelbach, 149 F.3d 614, 617 (7th Cir. 1998) (prosecutors entitled to absolute immunity for their decision to commence and continue prosecution).  That leaves Plaintiff's allegations pertaining to Defendants Killian and Koritz purportedly acting in their investigatory capacity.  Plaintiff alleges: (1) Defendant Killian initiated and assisted with the investigation of Plaintiff; (2) Defendant Killian put Defendant Buehnerkemper on the stand before the grand jury to give false testimony; (3) Defendant Koritz directed the police to arrest Plaintiff; and (4) Defendants Killian and Koritz failed to disclose exculpatory evidence.

Plaintiff asserts that Defendant Killian is not entitled to absolute immunity because he initiated and assisted with the investigation of Plaintiff.  However, this Court finds Plaintiff fails to state a claim with regard to Defendant Killian's initiation and assistance of the investigation because she does not allege any wrongdoing during the investigation.

In her response to the Motion to Dismiss, Plaintiff argues that she alleged that Defendant Killian fabricated evidence that more than $100,000 was missing when no money was in fact missing. Response, p. 18. The problem with this argument, however, is that this is not what Plaintiff alleges in her Amended Complaint.

In her Amended Complaint, Plaintiff alleges that a cursory audit requested by Defendant Weiss showed an $80,000 discrepancy in the written and computer records. Amd. Cmplt. ¶16. A a subsequent audit performed at Killian's request showed a discrepancy between the written and computer records but did not indicate whether money was missing. Amd. Cmplt. ¶¶17, 18. Plaintiff also alleged that the investigation resulted in no credible evidence that any wrongdoing had been committed. Amd. Cmplt. ¶ 32 ("no credible evidence had been obtained to implicate [Plaintiff]"); Amd. Cmplt. ¶ 34 ("[a]t no time was there ever any evidence developed indicating [Plaintiff] committed any crime"). Therefore, Plaintiff fails to state a claim that Killian fabricated evidence during the investigation.

Plaintiff also argues Defendant Killian is not entitled to absolute immunity for his direct examination of Defendant Buehnerkemper before the grand jury wherein both Killian and Buehnerkemper stated that there had been a forensic audit of the books which indicated a large amount of money was missing and that Plaintiff was responsible for the missing funds. Plaintiff also argues that while a prosecutor can be immune from prosecution before a grand jury, Defendant Killian should not be immune for his pre-indictment conduct of conspiring to make up and present false testimony to the grand jury.

This Court finds that Killian's use of the grand jury to obtain subpoenas constituted a prosecutorial function during the judicial phase of the criminal proceedings. See, e.g., Lawlor v. Connelly, 2011 WL 1740178, at *8 (D. Conn. 2011) (applying absolute immunity to prosecutor's alleged failure to disclose exculpatory evidence to an investigatory grand jury); Gordon v. Devine, 2008 WL 4594354, at *11 (N.D. Ill. 2008) (absolute immunity extends to prosecutors who knowingly solicit false testimony before the grand jury). To the extent

Plaintiff alleges that Defendant Killian and Buehnerkemper conspired together to decide to present this false testimony to the grand jury, such conduct is absolutely immune as well.  Rehberg v. Paulk, 611 F.3d 828, 841 (11th Cir. 2010) (finding that absolute immunity applied both to the false testimony itself and the conspiracy to present false testimony), cert. granted, 131 S. Ct. 1678 (2011); Bernal v. Shifflet, 1995 WL 417552, at *4 (N.D. Ill. 1995) ("Prosecutors do not lose their immunity as a result of allegations of conspiracy to perform otherwise immune actions").

Defendant Koritz is entitled to absolute immunity for the claim that he directed the arrest of Plaintiff without probable cause.  Plaintiff alleges that she was charged and Defendant Koritz "authorized" the arrest of Plaintiff.  Because the authorization of Plaintiff's arrest occurred after Defendant Koritz made the decision to charge Plaintiff, this Court finds that this conduct was "intimately associated with the judicial phase of the criminal process" (Imbler, 424 U.S. at 430) and, therefore, subject to absolute immunity.

Defendants Killian and Koritz are also entitled to absolute immunity on Plaintiff's claim that Defendants Killian and Koritz failed to disclose exculpatory evidence– namely, the fact that no forensic audit had been performed. Under Brady v. Maryland, 373 U.S. 83, 87 (1963), prosecutors must disclose material, exculpatory evidence to the defense. See also United States v. Bagley, 473 U.S. 667, 676 (1985) (finding that impeachment evidence falls within the Brady rule). This "duty extends to the police and requires that they similarly turn over exculpatory and impeaching evidence to the prosecutor, thereby triggering the prosecutor's disclosure obligation." Carvajall v. Dominguez, 542 F.3d 561, 566 (7th Cir. 2008).

However, "Brady applies only where the allegedly exculpatory evidence was not disclosed in time for the defendant to make use of it." United States v. Grintjes, 237 F.3d 876, 880 (7th Cir. 2001). The Brady doctrine "does not require pretrial turnover." Evans v. Circuit Court of Cook County, Ill., 569 F.3d 665, 667 (7th Cir. 2009) (also noting that "[u]ntil a trial has been held, it is not possible to be sure what will and

will not be disclosed or whether any non-disclosure is material").

Therefore, to the extent Plaintiff alleges that Defendant Killian and

Koritz failed to disclose exculpatory evidence before Plaintiff's arrest,

such allegation fails to state a claim.  Beaman v. Souk, 2011 WL 832506,

at *6 (C.D. Ill. 2011) ("[N]o rule of constitutional law holds that

exculpatory evidence must immediately be turned over to a suspect in a

criminal investigation and certainly no rule of law that requires such

evidence be turned over before an arrest").

To the extent Plaintiff alleges Defendants Killian and Koritz failed

to disclose exculpatory evidence after Plaintiff's arrest, such action is

protected by absolute immunity because the alleged failure to turn over

evidence occurred during the judicial phase of the case when Killian and

Koritz were functioning as prosecutors.  See Beaman v. Souk, 2011 WL

832506, at *9 (finding prosecutors absolutely immune with respect to

any allegation they withheld evidence during the judicial phase);  Fields

v. Wharrie,  __ F.3d at ___, 2012 WL 614714, at *6 (holding that "a

Brady violation is not committed unless and until a prosecutor, in the

course of preparing for or conducting a trial or direct appeal, does not turn over the material evidence in question" and finding a prosecutor absolutely immune "with respect to his actions and decisions pertaining to his fulfilment of <u>Brady</u>").  For all these reasons, Defendants Killian and Koritz are entitled to absolute immunity on Counts I and II.

4.  <u>Claims Against Defendant Weiss in her Individual Capacity Remain</u>

Defendant Weiss argues she is entitled to qualified immunity on the individual capacity claims against her.  In seeking qualified immunity, Defendant Weiss argues (1) Plaintiff's allegations that Weiss violated Plaintiff's constitutional rights by terminating Plaintiff's employment is barred by the statute of limitations and (2) Plaintiff's arrest could not have occurred at Weiss' direction because Weiss left office in December 2008 and Plaintiff was charged in May 2009.

Defendant Weiss has failed to meet her burden of showing that the Amended Complaint should be dismissed on the grounds stated.  Plaintiff's allegations are not as limited as Defendant Weiss suggests.  Plaintiff alleges not only that Defendant Weiss terminated Plaintiff but

also that she conspired with the other Defendants, including Defendant Buehnerkemper, to have Plaintiff falsely arrested, imprisoned, and prosecuted. Amd. Cmplt. ¶ 12. Plaintiff alleges that Defendant Weiss was motivated by a desire to prevent Plaintiff from running for the Circuit Clerk position. Amd. Cmplt. ¶ 42. Plaintiff also alleges it can be reasonably inferred that Defendant Weiss's actions were intended to shift the blame for the "potential political embarrassment spurring from improperly kept books in the County Clerk's office." Id.

As for the allegations against Defendant Weiss after she retired as Circuit Clerk, a private actor can act under color of law where the private actor conspires with state actors to deprive an individual of her constitutional rights. See Brokaw v. Mercer County, 235 F.3d 1000, 1016 (7th Cir. 2000). While bare allegations of a conspiracy are not enough, Defendant Weiss does not address the sufficiency of Plaintiff's conspiracy allegations. Therefore, Defendant Weiss' motion to dismiss the individual capacity claim on grounds of qualified immunity is denied, but Defendant Weiss may raise qualified immunity again on summary

judgment.

## B.   COUNT III: STATE LAW MALICIOUS PROSECUTION CLAIM

All the Defendants also seek to dismiss Plaintiff's state law malicious prosecution claim (Count III).  Defendants argue (1) Plaintiff cannot prove the required elements of the cause of action and (2) they are immune from prosecution.

### 1.   Defendants Killian and Koritz are Entitled to Immunity on Plaintiff's State Law Claim

Defendants Koritz and Killian assert that they are entitled to immunity on Plaintiff's state law claims under (1) section 2-201 of the Illinois Tort Immunity Act; (2) section 2-208 of the Tort Immunity Act; and (3) the doctrine of public official immunity.  However, this Court finds that because Koritz and Killian's conduct fell within the scope of traditional prosecutorial functions, and because the state law claims are based on the same factual allegations as the § 1983 claims, Defendants Koritz and Killian are entitled to absolute immunity on the state law claims.

The doctrine of public official immunity affords a public official

immunity for his actions that were performed within his official discretion and were not "the result of 'malicious motives.'" Aboufariss v. City of DeKalb, 305 Ill. App. 3d 1054, 1064 (1999) (but also holding that "[a] prosecutor acting within the scope of her prosecutorial duties enjoys immunity rom civil liability, the same immunity afforded to the judiciary," which is absolute). Despite the caveat that public official immunity does not apply where the plaintiff can show malice, the more recent trend has been to apply to state law claims the same absolute immunity given to prosecutors on federal claims. See White v. City of Chicago, 369 Ill. App. 3d 765 (1st Dist. 2006) (applying absolute prosecutorial immunity to state law claims); Kitchen v. Burge, 2012 WL 346450, at *3 (N.D. Ill. 2012) ("Illinois and federal doctrines of prosecutorial immunity are coterminous"); Patterson v. Burge, 2010 WL 3894433 (N.D. Ill. 2010) (because the bases for the state law claims were the same as for the federal law claims for which the court found the prosecutor was immune, the prosecutor was immune from suit with respect to the state law claims); Hughes v. Krause, 2008 WL 2788722, at

*2 (N.D. Ill. 2008) ("Although under Illinois law there is a doctrine of public official immunity which has a lack of malice requirement, such is not the immunity afforded prosecutors [who], like judges, must be allowed to perform the functions of their jobs fearlessly and without fear of consequence"). Therefore, this Court finds that Defendants Koritz and Killian are entitled to immunity on the state law claim against them.

2. <u>State Law Claim Against Defendant Weiss Remains</u>

Defendant Weiss argues she is entitled to public official immunity on Plaintiff's state law claim against her. Defendant Weiss focuses on the allegations that she terminated Plaintiff, arguing that such claim is barred by the statute of limitations and public official immunity.

However, Plaintiff does not focus on Defendant Weiss's act of terminating her but on allegations that Defendant Weiss instituted the investigation and prosecution of Plaintiff. Defendant Weiss does not address immunity with regard to this aspect of Plaintiff's claim. Therefore, she has failed to show at this time that she is entitled to immunity on Plaintiff's state law claim of malicious prosecution.

This Court further finds that Plaintiff has stated a malicious prosecution claim against Defendant Weiss. To state a claim for malicious prosecution, a plaintiff must allege (1) that a defendant commenced or continued an original criminal or civil judicial proceeding, (2) which terminated in favor of the plaintiff, (3) that no probable cause existed for such proceeding; (4) the presence of malice, and (5) damages. Swick v. Liautaud, 169 Ill. 2d 504, 512 (1996).

A person who knowingly gives information to a prosecuting officer "commences" the prosecution if the prosecution is based on that false information. See, e.g., Randall v. Lemke, 311 Ill. App. 3d 848, 851 (2000) (finding the defendant did not commence the prosecution against the plaintiff where the charges filed against the plaintiff had nothing to do with the information the defendant reported to the police and the prosecution was based on information gathered independently); see also Allen v. Berger, 336 Ill. App. 3d 675, 678 (2002) ("when a person knowingly subjects another to unwarranted criminal prosecution, he or she may be held accountable for the damages that result"). Here, a

reasonable inference can be drawn from Plaintiff's Amended Complaint that Defendant Weiss knowingly gave false information to the other Defendants, Killian, Koritz, and Buehnerkemper, which resulted in her prosecution based on that information.

Plaintiff has also alleged the remaining elements of a malicious prosecution claim. She has alleged that the criminal proceeding terminated in her favor, that no probable cause existed for such proceeding, that Defendant Weiss acted with malice, and that Plaintiff suffered damages. Therefore, this Court finds Plaintiff stated a malicious prosecution claim against Defendant Weiss.

3. Count III Against DeWitt County Is Dismissed

Defendants last argue that DeWitt County is entitled to immunity under section 2-109 of the Tort Immunity Act. Section 2-109 provides that "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." 745 ILCS 10/2-109.

This Court finds, however, that because Defendants Killian, Koritz, and Weiss are considered state officials, Plaintiff has failed to state a claim against DeWitt County for malicious prosecution.  <u>See</u>, <u>e.g.</u>, <u>Gordon</u>, 2008 WL 4594354, at *18 (finding that the county could not be held liable for alleged misconduct of the defendant state's attorneys under a <u>respondeat</u> <u>superior</u> theory); <u>Biggerstaff v. Moran</u>, 284 Ill. App. 3d 196, 199 (1996) (finding that the county was not vicariously liable for acts of the State's Attorney or assistant State's attorneys because they are not county employees).  The parties do not address whether DeWitt County should remain in the case for purposes of indemnification of Defendant Weiss.  <u>See</u>, <u>e.g.</u>, <u>Gordon</u>, 2008 WL 4594354, at *18 n. 12 (noting that "Defendants have conceded that Cook County could be required to indemnify the Defendant State's Attorneys for any successful claims against them").  Therefore, DeWitt County is dismissed.

## V.  CONCLUSION

For the reasons stated, Defendants' Motion to Dismiss (d/e 31) is GRANTED IN PART and DENIED IN PART.  The claims against

Defendants Killian, Koritz, and DeWitt County are DISMISSED WITH

PREJUDICE.  The claims against Defendant Weiss remain.  Defendant

Weiss shall file an answer on or before April 11, 2012.

ENTER: March 28, 2012

FOR THE COURT:

                                                    s/Sue E. Myerscough
                                      _____
                                      SUE E. MYERSCOUGH
                                      UNITED STATES DISTRICT JUDGE