IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SUSAN STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  11-3162 |
| | ) | |
| DEWITT COUNTY, ILLINOIS, KATHY | ) | |
| WEISS, in her official and individual | ) | |
| capacities; ANDREW KILLIAN, in his | ) | |
| individual capacity; RYAN | ) | |
| BUEHNERKEMPER, in his individual | ) | |
| capacity; and DICK KORITZ, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on the Motion to Dismiss filed by

Defendant Ryan Buehnerkemper (d/e 33).

Following the dismissal with prejudice of state criminal charges

against her, Plaintiff sued Illinois State Police Trooper Buehnerkemper

and four other defendants.  The other four defendants, former DeWitt

County Circuit Clerk Kathy Weiss, DeWitt County State's Attorney

Dick Koritz, DeWitt County Assistant State's Attorney Andrew Killian, and DeWitt County, have filed a separate motion to dismiss.

In her original Complaint, Plaintiff brought three claims pursuant to 42 U.S.C. § 1983:  false arrest (Count I), false imprisonment (Count II), and malicious prosecution (Count IV).  She also brought one claim under state law for malicious prosecution (Count III).

In October 2011, this Court dismissed Count IV with prejudice, dismissed Counts I and II without prejudice, and granted Plaintiff leave to replead Counts I, II, and III.  On October 31, 2011, Plaintiff filed an Amended Complaint.  On November 14, 2011, Defendant Buehnerkemper filed his Motion to Dismiss.

For the reasons that follow, the Motion to Dismiss is granted in part and denied in part.

## I.  FACTS ALLEGED IN THE AMENDED COMPLAINT

The Amended Complaint contains the following allegations. Between 1983 and March 23, 2007, Plaintiff was employed by the DeWitt County Circuit Clerk's office as a Deputy Clerk/Bookkeeper.

From December 1, 1998 to December 1, 2008, Weiss was the Circuit Clerk for DeWitt County.

Plaintiff alleges that in March 2007, shortly after she told fellow employees she had an interest in a candidacy for County Clerk of DeWitt County in the next election, Weiss terminated Plaintiff's employment. The termination was "due to an alleged discrepancy between the written account and computer account being implemented" in the office. Amd. Cmplt. ¶ 10. Plaintiff was one of several employees who had access to the books and the financial records.

Thereafter, at Weiss' request, Assistant State's Attorney "Killian (later under the direction of State's Attorney Koritz) initiated and conducted an investigation into the discrepancy in the two figures." Amd. Cmplt. ¶ 11. Weiss and Killian maintained involvement in the investigation.

In March 2007, Killian asked the Illinois State Police for assistance concerning a potential embezzlement by Plaintiff. Killian indicated to the State Police that a cursory audit, which had been requested by Weiss

and performed by Katye Goodin of Goodin Associates, Ltd., had

discovered an $80,000 discrepancy between the handwritten books and

the new computer system.  Thereafter, the firm of Mose, Yockey, Brown

& Kull LLC performed an audit at the request of Killian.  On June 1,

2007, Mose, Yockey, Brown & Kull LLC reported the results of the audit

to the County Board members of DeWitt County.  The results of the

audit indicated discrepancies existed between the computerized records

and the handwritten or manually kept records of the DeWitt County

Circuit Clerk's office.  According to Plaintiff, the "cursory audit" did not

determine which records were correct, whether any money was missing,

or whether there were only bookkeeping errors.  Amd. Cmplt. ¶ 18.

On March 27, 2008, Killian convened a grand jury for the County

of DeWitt.  Defendant Buehnerkemper, the lead investigator in the

investigation of Plaintiff, testified.  During Defendant Buehnerkemper's

direct examination by Killian, both Defendant Buehnerkemper and

Killian stated that there had been a "'forensic audit of the books'" which

indicated a large amount of money was missing and "that the loss

indicated that [Plaintiff] . . . was responsible for the missing funds."
Amd. Cmplt. ¶ 22,  Plaintiff alleges, however, that no forensic audit had
been performed.  At the request of Killian, the grand jury agreed to issue
subpoenas for the bank, credit, and debtor records of Plaintiff and her
husband.

 After a lengthy investigation, no credible evidence was found that
Plaintiff or her husband had unlawfully obtained any monies from
DeWitt County.  Defendants nonetheless continued their investigation.

On August 1, 2008, Kent Kull, the accountant involved in the
audit, admitted to a State Police investigator that he was not a forensic
auditor and that no forensic audit had taken place.  The Illinois State
police interviewed the previous accountant who had done several audits
of the Circuit Clerk's office over a multi-year period.  That accountant
told the trooper "that if there had been anywhere near the amount of
money missing that they had alleged, it certainly would have become
apparent and he would have found it during his audits."  Amd. Cmplt. ¶
30.

On May 13, 2009, Plaintiff was interviewed by the Illinois State Police and no incriminating information was revealed.  Plaintiff also alleges she asked for a lawyer several times before being allowed to speak to one.

 On May 15, 2009, Plaintiff was charged in state court with theft and official misconduct.  Koritz, with the knowledge and consent of all Defendants, made the decision to bring the charges and/or continue the investigation.  Plaintiff was arrested by Defendant Buehnerkemper and other officers.  The arrest was authorized by Koritz.  Plaintiff does not allege, however, that she was arrested pursuant to an arrest warrant.

Plaintiff alleges that all of the Defendants acted or failed to act with deliberate and reckless disregard for her constitutional rights.  Plaintiff further alleges there was no probable cause for her arrest because there was no credible evidence she was criminally culpable or that any money was missing.

On May 15, 2009, Plaintiff was arraigned and remanded to the custody of the Sheriff pending posting of bond.  Plaintiff posted bond on

May 29, 2009.

On August 17, 2010, on the eve of trial, Koritz issued a press release indicating that the charges of official misconduct and theft were being dismissed with prejudice.  The press release indicated that no forensic audit account of the books had been performed, as had been represented to the grand jury, and that there was no direct evidence Plaintiff committed a crime or was guilty of any wrongdoing.

Plaintiff alleges that at no time was there any evidence that Plaintiff committed a crime either prior to her being charged on May 15, 2009, or thereafter.  Plaintiff further alleges that "Defendants for years failed to disclose material, exculpatory facts that there was no evidence of wrongdoing by [Plaintiff], and that there was no evidence that there was money actually missing."

## II.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  For purposes of the

motion, a court must accept as true all well-pleaded allegations contained

in the complaint and draw all inferences in the light most favorable to the

non-moving party.  Estate of Davis v. Wells Fargo Bank, 633 F.3d 529,

533 (7th Cir. 2011).  To avoid dismissal for failure to state a claim, the

complaint must contain a "short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  That

statement must be sufficient to provide the defendant with "fair notice"

of the claim and its basis.  Tamayo v. Blagojevich, 526 F.3d 1074, 1083

(7th Cir. 2008); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555

(2007).  This means that (1) "the complaint must describe the claim in

sufficient detail to give the defendant 'fair notice of what the . . . claim is

and the grounds upon which it rests'" and (2) its allegations must

plausibly suggest that the plaintiff has a right to relief, raising that

possibility above a "speculative level."  E.E.O.C. v. Concentra Health

Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007) (quoting Twombly, 550

U.S. at 555); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

("A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant
is liable for the misconduct alleged").

## III.  ANALYSIS

Plaintiff's Amended Complaint contains three counts against
Defendant Buehnerkemper in his individual capacity: a § 1983 claim for
false arrest, a § 1983 claim for false imprisonment, and a state law claim
for malicious prosecution.  Defendant Buehnerkemper seeks to dismiss all
three counts.

### A.   COUNTS I AND II: FALSE ARREST AND FALSE IMPRISONMENT

In Counts I and II, the § 1983 false arrest and false imprisonment
counts, Plaintiff alleges, in addition to the allegations set forth above,
that Defendant Buehnerkemper (1) deprived Plaintiff of her liberty
without due process of law by arresting her, taking her into custody, and
holding her against her will; (2) made an unreasonable search and seizure
of Plaintiff's property without due process of law; (3) conspired with the
other Defendants for the purpose of impeding and hindering the due
course of justice, with intent to deny Plaintiff equal protection of the

laws; and (4) refused or neglected to prevent such deprivations, thereby

depriving Plaintiff of her rights under the Fourth, Fifth and Fourteenth

Amendments to the Constitution.

To prove a claim under 42 U.S.C. § 1983, a plaintiff must establish:

"(1) that some person has deprived him of a federal right and (2) that the

person who has deprived him of the right acted under the color of state

law." Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001) (quoting

Gomez v. Toledo, 446 U.S. 635, 640 (1980)).  To state a § 1983 claim

for false arrest, Plaintiff must allege that Defendant Buehnerkemper

arrested Plaintiff, Defendant Buehnerkemper did not have probable cause

to arrest Plaintiff, and Defendant Buehnerkemper was acting under color

of law.  See Muczynski v. Lieblick, 2010 WL 3328203, at *5 (N.D. Ill.

2010).  "A § 1983 false imprisonment claim seeks damages for injury

caused by the plaintiff's detention without probable cause."  National

Cas. Co. v. McFatridge, 604 F.3d 335, 344 (7th Cir. 2010).

Defendant Buehnerkemper moves to dismiss Counts I and II,

asserting that Plaintiff failed to state a claim for false imprisonment or

false arrest.  In addition, because Plaintiff's Complaint appears to contain additional § 1983 claims, Defendant Buehnerkemper also seeks to dismiss Counts I and II on the grounds that Plaintiff fails to state a claim for (1) an equal protection violation; (2) a constitutional violation stemming from the May 13, 2009 interrogation; and (3) a Fourth Amendment search and seizure violation.

1.  <u>Plaintiff States a Claim for False Arrest and False Imprisonment</u>

Defendant Buehnerkemper argues Plaintiff has failed to state a claim for false arrest and false imprisonment on several grounds.

First, Defendant argues that his grand jury testimony is protected by absolute immunity and that all claims founded on the grand jury testimony should be dismissed.  Defendant also argues that his grand jury testimony did not result in Plaintiff's arrest or imprisonment.

While Defendant Buehnerkemper is immune for his grand jury testimony, Plaintiff also alleges in her Amended Complaint that Defendant Buehnerkemper arrested her knowing that no probable cause existed to do so.  <u>See</u>, <u>e.g.</u>, <u>Treece v. Village of Naperville</u>, 903 F. Supp.

1251, 1258 (N.D. Ill. 1995) (noting that because "police officers, like everyone else, are immune from prosecution for their testimony before the grand jury . . . [the] plaintiff's claims cannot be grounded solely on the allegation that the officers gave false testimony to the grand jury"). The allegations relating to the grand jury testimony are only a part of Plaintiff's broader claims against Defendant Buehnerkemper. See, e.g. Hammond v. Kunard, 148 F.3d 692, 696 (7th Cir. 1998) (finding that while the officers were absolutely immune for their alleged false testimony before the grand jury, the plaintiff alleged the false testimony as only "part and parcel" of the plaintiff's broader claim). Moreover, even if the allegedly false grand jury testimony caused Plaintiff's arrest–a fact that is not alleged in the Amended Complaint because the grand jury testimony resulted in subpoenas for records and not an indictment–Defendant Buehnerkemper was not acting as a witness when he arrested Plaintiff. See Juriss v. McGowan, 957 F.2d 345, 348 (7th Cir. 1992) (finding that a police officer was not entitled to absolute immunity on false arrest claim even where the officer's immune

testimony led to the arrest of the plaintiff, noting that "testifying and arresting are two independent acts").  Therefore, Defendant Buehnerkemper is not entitled to dismissal of Counts I and II on the grounds that he is absolutely immune for his grand jury testimony.

Defendant Buehnerkemper next argues Plaintiff fails to adequately allege that Defendant lacked probable cause to arrest or imprison Plaintiff.  Defendant argues that the facts show that Plaintiff was the bookkeeper, a discrepancy in the books was found, and two separate nonforensic audits found at least $80,000 missing.

This Court finds Plaintiff's allegations sufficient to state a claim. Plaintiff alleges that Defendant Buehnerkemper was the lead investigator, knew that the investigation uncovered no evidence of a crime, and arrested Plaintiff without probable cause.  Moreover, Plaintiff alleged that there was no credible evidence that money was ever missing or that she was involved in any way.  At this stage of the litigation, accepting the facts alleged as true, Plaintiff has stated a claim for false arrest and false imprisonment.  See, e.g., Beaman v. Souk, 2011 WL 832506, at *14

(C.D. Ill. 2011) (finding, with regard to a state law claim, that whether the evidence constituted sufficient probable cause to arrest the plaintiff was a factual inquiry that could not be resolved on a motion to dismiss).

    2.    <u>Plaintiff's Additional Claims Contained in Counts I and II</u>

Plaintiff's Amended Complaint also contains references to an equal protection violation, the May 13, 2009 interrogation during which Plaintiff asked for an attorney several times, and an illegal search pursuant to the subpoenas issued by the grand jury.  Defendant moves to dismiss these claims.

First, Defendant argues Plaintiff fails to state a claim for an equal protection violation because she fails to plead she was a member of a protected class and did not adequately plead a "class of one" claim. Plaintiff does not address this issue.

"The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" <u>Reget v. City of La Crosse</u>, 595

F.3d 691, 695 (7th Cir. 2010).   Because Plaintiff does not allege

membership in a protected class, it appears that she is alleging an equal

protection claim under the "class of one" theory.

For a "class of one" equal protection claim, a plaintiff must allege:

(1) that the defendant intentionally treated her differently from other

similarly situated persons; and (2) "that there is no rational basis for the

difference in treatment or the cause of the differential treatment is a

'totally illegitimate animus' toward the plaintiff by the defendant."

McDonald v. Village of Winnetka, 371 F.3d 992, 1001 (7th Cir. 2004).

Moreover, a plaintiff must allege facts showing that a similarly situated

individual was treated differently.  See LaBella Winnetka, Inc. v. Village

of Winnetka, 628 F.3d 937, 942 (7th Cir. 2010) (affirming dismissal of

an equal-protection claim on a motion to dismiss where the plaintiff did

not "allege facts showing that it was similarly situated to any of the

comparators"); see also Goodman v. Clark, 2011 WL 3101769, at *11

(N.D. Ind. 2011) (dismissing the plaintiffs' equal protection violation

claim, finding the "allegations of intentional differential treatment . . . do

not rise above the level of speculation").

Here, Plaintiff failed to allege facts showing that she was treated differently than any similarly situated persons. Therefore, to the extent Plaintiff is attempting to bring an equal protection violation claim, that claim is dismissed without prejudice.

Second, Defendant argues Plaintiff fails to state a claim relating to the May 13, 2009 interrogation because (1) the claim is barred by the statute of limitations and (2) Plaintiff failed to allege she was not free to leave or that a reasonable person would not have felt free to leave.

Plaintiff responds that "this action by [Defendant] is part of his liability for his wrongful investigation leading to [Plaintiff's] false arrest." Therefore, because Plaintiff is not bringing a separate § 1983 claim pertaining to the May 13, 2009 interrogation, the motion to dismiss on this basis is denied.

Third, Defendant argues Plaintiff fails to state a claim for a Fourth Amendment search and seizure violation relating to the subpoenas issued by the grand jury. Defendant Buehnerkemper argues that Plaintiff failed

to allege that he was personally involved in this alleged search.  A

reasonable inference can be drawn that Defendant Buehnerkemper, as

the lead investigator, was personally involved in the search.  Therefore,

the Court will not dismiss this claim on the ground asserted by

Defendant.

B.   **COUNT III: STATE LAW CLAIM FOR MALICIOUS PROSECUTION**

In Count III, Plaintiff brings a state law malicious prosecution claim

against Defendant Buehnerkemper.  Defendant Buehnerkemper seeks to

dismiss Plaintiff's state law claim for malicious prosecution on the

grounds that: (1) the claim is barred by sovereign immunity; (2) Plaintiff

fails to allege a plausible claim of malice and fails to allege that

Defendant influenced the prosecutor's decision to bring the case to trial;

and (3) the claim is barred by public official immunity.   Because this

Court finds that Plaintiff has alleged sufficient facts and that a

determination on public official immunity cannot be made at this time,

the Motion to Dismiss Count III is denied.

1.   <u>Sovereign Immunity Does Not Bar Plaintiff's State Law Claim</u>

Defendant first argues that the state law claim is barred by sovereign immunity and must be brought in the Illinois Court of Claims. Because this issue potentially affects this Court's subject-matter jurisdiction, this Court addresses this issue first.

Under Illinois law, the State of Illinois cannot be made a defendant party to a lawsuit in any court except as provided in the Court of Claims Act (705 ILCS 505/1 et seq. (West 2008).  See 745 ILCS 5/1 (West 2008); Jackson v. Alverez, 358 Ill. App. 3d 555, 559 (2005) (noting the General Assembly reinstated sovereign immunity in the Court of Claims Act).  The Court of Claims has exclusive jurisdiction to hear certain matters, including "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit."  705 ILCS 505/8(d).

Under Illinois law, the applicability of sovereign immunity does not depend on the formal designation of the defendants in the action but on the nature of the State employee's conduct and the relief the plaintiff seeks.  Jackson, 358 Ill. App. 3d at 560;  Janes v. Albergo, 254 Ill. App.

3d 951, 956 (1993).  Specifically, an action brought against a State

employee in his individual capacity is viewed as having been brought

against the State where there are:  "'(1) no allegations that an agent or

employee of the State acted beyond the scope of his authority through

wrongful acts; (2) the duty alleged to have been breached was not owed

to the public generally independent of the fact of State employment; and

(3) where the complained-of actions involve matters ordinarily within

that employee's normal and official functions of the State[.]'"  Healy v.

Vaupel, 133 Ill.2d 295, 309 (1990) (quoting Robb v. Sutton, 147 Ill.

App. 3d 710, 716 (1986)); see also Jinkins v. Lee, 209 Ill. 2d 320, 330

(2004).  In addition, an action brought against a State employee in his

individual capacity will be considered an action against the State where a

judgment in favor of the plaintiff could operate to control the actions of

the State or subject it to liability.  Currie v. Lao, 148 Ill. 2d 151, 158

(1992).

In Brooks v. Ross, 578 F.3d 574, 580 (7th Cir. 2009), the Seventh

Circuit held that the plaintiff's state law malicious prosecution claim was

barred by sovereign immunity because the plaintiff did not allege that the state officials acted for a purpose unrelated to their employment.  See also, e.g., Turner v. Miller, 301 F.3d 599, 602 (7th Cir. 2002) (finding that the "district court improperly exercised subject-matter jurisdiction over [the plaintiff's] state law negligence claim" when it was barred by sovereign immunity).  More recently, however, the Seventh Circuit has held that "a state employee's sovereign-immunity defense does not impact a federal court's jurisdiction over a case." Fields v. Wharrie, ___ F.3d ___, ____, 2012 WL 614714, at *10 (7th Cir. 2012), citing Rodriguez v. Cook County, Illinois, 664 F.3d 627, 632 (7th Cir. 2011). Therefore, in light of Fields and Rodriguez, this Court will not dismiss the state law claim on the basis of sovereign immunity.  This Court further finds that even if Fields and Rodriguez do not apply, Plaintiff has alleged sufficient facts to suggest that the state law claim is not essentially a claim against the State.  See, e.g., Richman v. Sheahan, 270 F.3d 430, 442 (7th Cir. 2001) (""the critical question, then for determining the deputies' entitlement to sovereign immunity is whether the deputies

acted beyond the scope of their authority").  For these reasons, the
Motion to Dismiss Count III on the basis of sovereign immunity is
denied at this time but may be raised on summary judgment if
appropriate.

>  2.  <u>Plaintiff States a Claim for Malicious Prosecution Under State
>  Law</u>

Defendant Buehnerkemper also seeks to dismiss Count III on the
basis that Plaintiff failed to allege malice or that Defendant
Buehnerkemper influenced the prosecutor's decision to bring the case to
trial.

"To establish malicious prosecution, a plaintiff must show: (1) the
commencement or continuance of an original criminal or civil judicial
proceeding by the defendant; (2) that the proceeding terminated in favor
of the plaintiff; (3) the absence of probable cause; (4) malice; and (5)
damages."  <u>Gauger v. Hendle</u>,  954 N.E.2d 307, 326 (Ill. App. Ct. 2011).
In the Amended Complaint, Plaintiff alleges that (1) Defendants owed
Plaintiff the duty not to arrest and detain her without probable cause; (2)
as a result of Defendants' conduct, she was subject to criminal

prosecution; (3) that prosecution terminated in her favor; (4) Defendants had no probable cause to institute criminal prosecution; and (5) Plaintiff suffered damages.  Plaintiff also alleges Defendants "acted with malice and with willful, wanton and reckless disregard" to Plaintiff.

Defendant first argues Plaintiff failed to allege a plausible claim of malice.  This Court disagrees.

"Malice is defined as the initiation of a prosecution for any reason other than to bring a party to justice."  <u>Mutual Medical Plans, Inc. v. County of Peoria</u>, 309 F. Supp. 2d 1067, 1083 (C. D. Ill. 2004) (citing Illinois law).  Because Plaintiff alleges that no evidence existed to demonstrate either that a crime had been committed or that Plaintiff committed that crime, a reasonable inference can be drawn that Defendant initiated the prosecution against Plaintiff for an improper motive.  Therefore, for purposes of the motion to dismiss, Plaintiff has sufficiently alleged malice.

Defendant also argues Plaintiff failed to allege that Defendant influenced the prosecutor's decision "to bring the case to trial."

Under Illinois law, if there is an intervening event that breaks the chain of causation linking the police officer to the wrongful prosecution, such as the prosecutor's decision to indict, a plaintiff must allege that the police officer either exerted influence on the prosecutor, made misstatements to the prosecutor, or was involved in some post-arrest wrongdoing that influenced the prosecutor's decision to bring the case. Brown v. Mazurski, 2000 WL 1745242, at *3  (N.D.Ill. 2000).  In this case, Plaintiff has sufficiently alleged facts from which an inference can be drawn that (1) no intervening event–such as an indictment–broke the chain of causation and (2) Defendant told the prosecutor, falsely, that a forensic audit had been performed, which influenced the prosecutor's decision to bring the case.  See Rodgers v. Peoples Gas, Light & Coke Co., 315 Ill. App. 3d 340, 348-49 (2000) (noting that liability for malicious criminal prosecution "extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present"); Allen v. Berger, 336 Ill. App. 3d 675, 680 (2002) (finding that the plaintiff sufficiently stated a claim for

malicious prosecution where the plaintiff alleged that the defendants'
"knowingly false statements to the prosecuting attorney set the
prosecution in motion").

    3.    <u>At this Stage in the Litigation, Public Official Immunity Does
Not Bar Plaintiff's State Law Claim</u>

Defendant also argues the state law claim for malicious prosecution
must be dismissed because he is entitled to public official immunity.
Defendant argues that the allegations against him are based entirely on
Defendant's discretionary duties as a state trooper–investigating,
arresting, and testifying–thus entitling him to public official immunity.

Under Illinois law, public official immunity is "a common law
doctrine which serves to protect state officials from being inhibited from
acting in the public's best interest because of fears of personal liability."
<u>Michigan Ave. Nat. Bank v. County of Cook</u>, 191 Ill. 2d 493, 520
(2000).  "The immunity attaches only to conduct by a public official that
is discretionary, rather than ministerial, in nature" and applies "only to
those acts which are unique to the particular public office."  <u>Currie</u>, 148
Ill. 2d at 166-67.  In addition, some Illinois courts have held that to be

protected by public official immunity, "the actions taken must be within the scope of the official's authority and not as a result of malicious motives." <u>Hanzel Constr., Inc. v. Wehde & Southwick, Inc.</u>, 130 Ill. App. 3d 196, 200 (1985); <u>but</u> <u>see</u> <u>Hughes v. Krause</u>, 2008 WL 2788722, at *2 (N.D. Ill. 2008) (noting that "[a]lthough under Illinois law there is a doctrine of public official immunity which has a lack of malice requirement, such is not the immunity afforded prosecutors").

At this stage of the litigation, this Court does not find that Defendant Buehnerkemper is protected by public official immunity because Plaintiff has alleged malice. Defendant may raise this claim again in a motion for summary judgment.

## IV. CONCLUSION

For the reasons stated, the Motion to Dismiss filed by Defendant Ryan Buehnerkemper (d/e 33 )is GRANTED IN PART and DENIED IN PART. To the extent Plaintiff attempted to raise an equal-protection claim, that claim is dismissed without prejudice. The Motion to Dismiss is denied in all other respects. Defendant Buehnerkemper shall file an

answer to Counts I, II, and III on or before April 11, 2012.

ENTER: March 28, 2012

FOR THE COURT:


                                    s/Sue E. Myerscough
                                   SUE E. MYERSCOUGH
                      UNITED STATES DISTRICT JUDGE