E-FILED
Monday, 15 April, 2013 02:50:29 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| SUSAN STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 11-CV-3162 |
| v. | ) | |
| | ) | |
| DEWITT COUNTY, ILLINOIS; KATHY WEISS, in her official and individual capacities; ANDREW KILLIAN, in his official and individual capacities; RYAN BUEHNERKEMPER, in his official and, individual capacities; and DICK KORITZ, in his official and individual capacities, | ) | Judge Susan E. Myerscough<br>Magistrate Judge Byron Cudmore<br>Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

**DEFENDANT KATHY WEISS' MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR SUMMARY JUDGMENT**

Defendant Kathy Weiss ("Defendant" or "Weiss"), by her attorneys Karin L. Anderson and Julie A. Bruch, of O'Halloran Kosoff Geitner & Cook, LLC, hereby submits in response to the amended complaint of Plaintiff Susan Stevens ("Plaintiff" or "Stevens") this memorandum of law in support of her motion for summary judgment and states as follows:

## INTRODUCTION

On October 31, 2011, Stevens filed her amended complaint against Defendants Kathy Weiss and Ryan Buehnerkemper and re-pled her claims of §1983 false arrest in Count I, §1983 false imprisonment in Count II and Illinois state malicious prosecution in

Count III.[1] Defendants DeWitt County, Assistant State's Attorney ("ASA") Andrew Killian and State's Attorney ("SA") Dick Koritz were previously dismissed from the lawsuit. (Doc. 38).

Plaintiff's amended complaint contains new allegations that Kathy Weiss, the Circuit Clerk, conspired with others to discriminate against Susan Stevens and deprive her of her constitutional rights. (Doc. 30, ¶¶38-43). Plaintiff's loosely-pled conspiracy theory suggests that Weiss set this conspiracy in motion when she terminated Stevens as the bookkeeper after being informed that $80,000 was missing from the Circuit Clerk's office. (Doc. 30, ¶¶10, 42). The missing money was first discovered by a computer software trainer and later confirmed by a certified public accountant. (Doc. 30, ¶¶16-18). Plaintiff further alleges that after retiring in December 2008, Kathy Weiss: a) maintained involvement in ASA Killian's investigation, b) kept in constant contact with ASA Killian throughout the investigation, c) knew of and consented to Illinois State Police Trooper ("Trooper") Buehnerkemper and SA Koritz arresting Susan Stevens in May 2009, d) bringing charges against Stevens, and e) continuing the prosecution of Stevens. (Doc. 30, ¶11, 27). Finally, Plaintiff alleges that Kathy Weiss had the final policy-making authority not only to terminate Susan Stevens, but also to arrest, imprison and prosecute her without probable cause. (Doc. 30, ¶¶43-46, 55).

The Court should grant summary judgment to Defendant Weiss on all counts because the undisputed facts show that: a) Weiss did not conspire with a state actor or

[1] Defendant Buehnerkemper is represented by separate counsel and filed his own motion for summary judgment.

anyone else to deprive Stevens of her constitutional rights; b) Weiss was not personally involved in Stevens' arrest, imprisonment or prosecution; c) Weiss was entitled to qualified immunity regarding Plaintiff's §1983 claims against her; d) Weiss was entitled to public official immunity regarding Plaintiff's state law claim against her; e) Stevens failed to establish that probable cause was lacking; and f) Stevens failed to establish her malicious prosecution claim.

## **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## ARGUMENT

### I. Summary Judgment Should Be Entered On All Counts Because Stevens Failed To Establish Her Conspiracy Theory Against Defendant Weiss.

Summary judgment is appropriate on all three counts against Defendant Weiss in her individual capacity because the record is devoid of evidence that Weiss was in any way personally responsible for Stevens' arrest, imprisonment and prosecution.

Section 1983 liability is premised on those, acting under color of state law, who cause or participate in a constitutional deprivation. 42 U.S.C. § 1983; *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012); *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). Although private actors can act under color of law when they conspire with a state actor to deprive an individual of their constitutional rights, there must be some concerted effort between a state actor and the individual. *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998); *Browkaw v. Mercer County*, 235 F.3d 1000, 1016 (7th Cir. 2000). In fact, to establish § 1983 liability through a conspiracy theory, a plaintiff must show that (1) the state official and private individual reached an agreement to deprive the plaintiff of his constitutional rights, and (2) the non-state actor was a "willful participant [ ] in joint activity with the State or its agents." *Fries*, 146 F.3d at 457 (citations omitted); *Mosley v. City of Chicago*, 614 F.3d 391, 399 (7th Cir. 2010); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007). Bare allegations of a conspiracy will not withstand summary judgment. *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003); *see also Gramenos v. Jewel Cos.*, 797 F.2d 432, 436 (7th Cir. 1986)("A party may not cry "conspiracy" and throw himself on the jury's mercy. Even if the jury

should disbelieve all the [defendants'] denials, this would leave [the plaintiff] with no evidence."). Conspiracy allegations are bare if the record is devoid of "overt acts reasonably related to the promotion of the alleged conspiracy." *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000)(quoting *Spiegel v. Cortese*, 196 F.3d 717, 726-27 (7th Cir. 2000); *see also Kunik v. Racine County*, 946 F.2d 1574, 1580 (7th Cir.1991) (A conspiracy claim cannot survive even at the dismissal stage if there are only allegations which "are vague, conclusory and include no overt acts reasonably related to the promotion of the alleged conspiracy").

As Weiss retired in 2008 she was no longer a state actor when Stevens was arrested and charged in May 2009. (Doc. 30, ¶9). As Weiss was never a police officer or prosecutor she did not herself arrest, imprison or charge Stevens in 2009. (*Id,* ¶27). There is also no evidence that Weiss and ASA Killian, SA Koritz or Trooper Buehnerkemper reached an agreement to knowingly falsely arrest, charge or imprison Stevens, and that Weiss was a willful participant in an unconstitutional activity with the State or its agents. In fact, Weiss was not even aware of Stevens' arrest, she did not request, tell or pressure any state actor to file charges against Stevens, nor did she participate in the prosecution of Stevens. (Defendant Weiss' Statement of Material Facts, hereinafter "SMF" ¶¶42-44, 47-49, 51-52, 61-66, 68).

Rather than pointing to overt acts that Weiss took to promote the conspiracy, Stevens, like the plaintiff in *Kuhn*, seems to contend that Weiss' "connection to the arrest… is enough to impose personal liability" for all three counts. *Kuhn*, 678 F.3d at 556 (the Seventh Circuit disagreed with this contention and declined to impose personal

liability under § 1983). Yet, Stevens herself testified that she did not know the extent of Kathy Weiss' involvement in the investigation other than being interviewed a few times by the Illinois State Police, she did not know about Weiss' continued involvement in the investigation and she did not ask about Weiss' involvement. (SMF ¶¶47-48, 52, 63, 65, 68).

Stevens further testified, contrary to her allegations in her amended complaint, that she did not know whether Kathy Weiss maintained contact with ASA Killian; she merely *assumed* that Weiss did, although she never witnessed it. (*Id.* at ¶¶47-48). Stevens testified that she had no knowledge of whether Weiss knew of and consented to the State's Attorney bringing charges against her. (*Id.* at ¶¶52, 63, 65). Stevens also testified, contrary to the allegations in her amended complaint, that: a) she had no knowledge of whether Weiss was involved in the prosecution of her case or her arrest; b) she had no way to know whether Kathy Weiss worked together with any other defendant to have her arrested, c) that Kathy Weiss had no authority to arrest her, lock her up in jail, file charges against her or prosecute her. (*Id.* at ¶¶61-62, 68).

Stevens' own testimony is void of any assumptions that Weiss may have formed an agreement with the state actors to arrest and charge Stevens, and any such speculation is certainly not sufficient evidence to withstand summary judgment. *Williams*, 342 F.3d at 785 ("Although a conspiracy certainly may be established by circumstantial evidence, we have stressed that such evidence cannot be speculative."). Certainly there could have been no agreement to have Stevens arrested and charged in order to prevent her from obtaining the Circuit Clerk position, as is alleged, because

Stevens own testimony confirmed that Weiss never knew of Stevens' intention to run for Circuit Clerk. (*Cf.* Doc. 30, ¶¶10, 42 *with* SMF ¶¶9, 67).

Moreover, Stevens' bare allegations of a conspiracy cannot suffice to save her case, especially where other testimony supports that Weiss had legitimate reason to report Stevens to state authorities and was not providing false information. *Williams*, 342 F.3d at 785. The evidence reflects that it was independently found and reported to Weiss by a computer software trainer, and later confirmed by a CPA firm, that there was a discrepancy of approximately $80,000 in the Clerk's Office books for which, as the bookkeeper, Stevens was responsible. (Doc. 30, ¶¶8, 10, 16-18; SMF ¶¶14, 17-18, 21-26, 34, 36-37). Kayte Goodin, the computer software trainer working with Stevens, even accompanied Weiss to report the discrepancy to the ASA Killian because she "felt that what [she] had seen in Susan Stevens' bookkeeping was far more than sheer carelessness." (SMF ¶¶25-26).

The record lacks evidence of an agreement between Weiss and any state actor to deprive Stevens of her constitutions rights; rather, it reflects only that Weiss and Goodin spoke to ASA Killian about the $80,000 discrepancy that Goodin found in Stevens' books. (SMF ¶26-30). Goodin and Weiss asked Killian to conduct an *investigation* on Weiss' behalf and sought his help in preparing a termination letter for Weiss; there is no evidence that Weiss ever requested that Stevens be arrested, prosecuted or imprisoned. (*Id*). Individuals are not liable under § 1983 for reporting crimes to the police, because doing so simply furnishes the police with information, and the law enforcement state actors then act under their own initiative. *Gramenos*, 797 F.2d at 435-36; *Moore v.*

*Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1352 (7th Cir. 1985); *see also Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 327 (7th Cir. 1978)("[W]e decline to hold that the mere act of furnishing information to law enforcement officers constitutes joint (activity) with state officials in the prohibited action (that is, the allegedly unconstitutional arrest of [plaintiff]).")(internal quotation omitted).

ASA Killian acted under his own initiative by actually commencing an investigation with the Illinois State Police, obtaining the Board's approval to hire a CPA firm to conduct an audit of the Circuit Clerk's books, and eventually convening a grand jury. (SMF ¶¶31-33, 38). The County Board acted under their own authority when they authorized Killian's hiring of a CPA firm to audit the books at the Clerk's Office; Weiss was never involved in this decision. (*Id.* at 33). Trooper Buehnerkemper also acted under his own authority when he conducted his extensive investigation and report on Stevens that lead to Buehnerkemper arresting and charging Stevens on May 13, 2009. (*Id.* at ¶¶39, 50, 53-54, 58, 60). The new State's Attorney, Dick Koritz also acted under his own authority when he approved the charging of Stevens. (*Id.* at 56, 60). There is no evidence that Weiss knew of, let alone conspired to generate, these decisions. (SMF ¶¶32-35, 38, 40, 43-44, 46-49, 51-52, 60-66, 68).

"A party cannot resist summary judgment by pointing to snippets of depositions when the point of every witness's statement was that there was no agreement [to deprive the individual of her constitutional rights], and the police exercised independent judgment." *Gramenos*, 797 F.2d at 436. Weiss' involvement in the investigation was limited to being interviewed by Trooper Buehnerkemper four

times. (SMF at 51). Weiss' professional involvement in the grand jury proceedings regarding Stevens was limited to her office calling the grand jurors and Weiss signing subpoenas issued by the grand jury. (*Id.* at 41-42). Weiss had no personal involvement in the grand jury proceeding regarding Stevens. (*Id.* at 42). As even snippets of depositions in this case do not provide evidence of any joint action, concerted effort, or even a general understanding between Weiss and state law enforcement actors, summary judgment is appropriate on all counts against Weiss.

## II. Summary Judgment Should Be Entered On Counts I and II Because Defendant Weiss Has Qualified Immunity.

Assuming *arguendo* that Weiss caused or participated in Stevens' arrest, Counts I and II against Weiss still fail because she is entitled to qualified immunity. Whether an official is entitled to qualified immunity is a question of law. *Jones v. Webb*, 45 F.3d 178, 183 (7th Cir. 1995). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 816-19 (1982). It is the plaintiff's burden to demonstrate the existence of a clearly established constitutional right. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994). A clearly established right is one where the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000).

Stevens alleges that all defendants interfered with her constitutional right to be

free from unlawful arrest and imprisonment. (Doc. 30 ¶38). A defendant does not have to directly participate in a § 1983 violation to be liable, but she must have acted with "deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986).

As a retired Circuit Clerk, Weiss did not herself investigate, arrest or imprison Stevens. It was ASA Killian who initiated the investigation of Stevens and the grand jury, and it was Trooper Buehnerkemper who physically arrested her. (SMF ¶¶32, 34, 40, 60). As discussed *supra* in I, Stevens failed to establish that Weiss conspired to have her arrested or imprisoned in order to shift blame for the improper Clerk bookkeeping, prevent Stevens from running for Circuit Clerk, or for any other purposes. (SMF ¶¶9-10, 67-69). Similarly, Stevens has not provided any evidence that Weiss even knew of, or consented to, Stevens being arrested or imprisoned in 2009. (SMF ¶¶ 47-49, 51-52, 61-69).

The bare bone of Stevens' claim against Weiss is whether Weiss, by reporting to ASA Killian that Stevens' bookkeeping left $80,000 unaccounted for, deliberately or recklessly disregarded Stevens' right to be free from unlawful arrest and imprisonment, and whether Weiss knew she was doing so because pre-existing law prohibited such behavior. *Denius*, 209 F.3d at 950; *Rascon*, 803 F.2d at 274. As Circuit Clerk, Weiss had a duty to "control the internal operations of [her public] office." 55 ILCS 5/3-2002.2. This Illinois Statute provides Weiss with the discretion to terminate employees who are suspected of conducting unlawful activities within the Circuit Clerk office, and to report

these suspected unlawful activities to authorities. Stevens was aware of Weiss' authority to terminate her and she did not contest it. (SMF ¶12).

Public officials can lose their qualified immunity if they abuse their positions of power by knowingly providing false information to authorities. *Yeksigian v. Nappi*, 900 F.2d 101, 102-104 (7th Cir. 1990). Weiss received information of Stevens' bookkeeping discrepancy and the suspiciousness of it from an independent party, and the veracity of this information was later confirmed by an independent CPA audit. (SMF ¶¶24-25, 34, 37). It was based on this independent report that Weiss informed ASA Killian of Stevens' bookkeeping discrepancy. (SMF ¶¶23-28). The evidence only displays that the information Weiss provided to authorities was true to the best of her knowledge, and provided in good faith. Therefore, even if Weiss' action of reporting the missing $80,000 was considered state action, because at that time she was the Circuit Clerk, there is no evidence that she was abusing her power by knowingly providing false information. *Cf. with Yeksigian*, 900 F.2d at 102, 104.

A "reviewing court should ask whether an official acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed several years after the fact." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999)(internal quotation omitted). The defense was unable to find any Seventh Circuit case law which proscribes that the good faith provision of information to police is unconstitutional if the information is later found not to be wholly accurate. Because Weiss' report to ASA Killian was not "knowingly false," this action was not unlawful as defined by pre-existing law, and was in fact

objectively reasonable at that time. *Kiddy-Brown v. Blagoevich*, 408 F.3d 346, 359 (7th Cir. 2005)("The action's unlawfulness must be "apparent" from pre-existing law.")(citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Moreover, Weiss did not know what, if anything, ASA Killian would do with this information after she provided it to him as she did not speak with him or Trooper Buehnerkemper about the details of the investigation of Stevens. (SMF ¶¶46-49, 51-52). ASA Killian went on to acquire much more information from audits, the investigation of Stevens' bank records and from the rest of Trooper Buehnerkemper's investigation. (*Id.* at ¶¶37-38, 40, 50, 53-54, 60). The audit revealed that the Circuit Clerk's Office books reflected an $83,518.20 deposit discrepancy and $31,202.83 in missing deposits. (*Id.* at ¶37). An interview of Stevens' daughter revealed that "she would see a money bag from the Clerk's office in her mom's purse in the house… and her mom would bring the bag home and take it to the bank;" a practice which was not allowed. (*Id.* at ¶54). The information acquired through the state's investigation of Stevens is what ultimately led to her arrest and charges being filed, not Weiss' initial information. (*See* Doc. 60 at 21-25)(arguing that Trooper Buehnerkemper' probable cause to arrest Stevens was "voluminous"). As such, Weiss' decision to report Stevens to ASA Killian, and later to terminate Stevens, was not the cause of any constitutional deprivation. *Kuhn v. Goodlow*, 678 F.3d 552, 556-57 (7th Cir. 2012) (where a city building inspector had no authority to arrest plaintiff, and the arrest was effectuated based on more than a ordinance violation that was noted by the inspector, the inspector could not be personally liable under § 1983 for the alleged false arrest). Rather, Weiss's decision to

report Stevens to ASA Killian was simply a discretionary performance of her official duties, which was not taken in reckless disregard to Stevens' constitutional rights.

Because Stevens has not shown that it was a clearly established violation of federal law for Weiss to, in good faith, report Stevens' suspected misconduct to authorities, qualified immunity applies and requires summary judgment to be granted for Counts I and II. *Upton v. Thompson,* 930 F.2d 1209, 1212 (7th Cir.1991) ("Immunity should be applied unless it has been authoritatively decided that certain conduct is forbidden.")(internal quotation omitted).

## III. Summary Judgment Should Be Entered On Count III Because Defendant Weiss Has Public Official Immunity.

Stevens' state law claim for malicious prosecution similarly fails because as a public official exercising her policy discretion, Weiss has tort immunity under the Illinois Tort Immunity Act ("Tort Immunity Act"). 745 ILCS 10/2-201; 745 ILCS 10/1-202. State rules of immunity are binding in federal court with respect to state law claims. *Benning v. Board of Regents of Regency Univs*. 928 F.2d 775, 779 (7th Cir. 1991). The Tort Immunity Act protects public employees from liability for acts which are an exercise of their official policy discretion, even if the act involves "corrupt or malicious motives." 745 ILCS 10/2-201; *Village of Bloomingdale v. CDG Enterprises, Inc*., 196 Ill. 2d 484, 486, 752 N.E.2d 1090 (Ill. 2001). This immunity is premised upon the idea that public officials should be allowed to exercise their judgment in rendering policy decisions without fear that a good-faith mistake might subject them to liability. *Harrison*

*v. Hardin County Community Unit School District*¸197 Ill.2d 466, 758 N.E.2d 848 (Ill. 2001); *Falk v. Martel*, 210 Ill.App.3d 557, 569 N.E.2d 248 (1991).

Policy decisions are those decisions that require the municipality to balance competing interests and to make a judgment call as to what solution will best serve each of those interests. *Harinek v. 161 N. Clark St. Ltd. Partnership*, 181lll.2d 335, 692 N.E.2d 1177 (1998). Discretionary acts are those that are unique to a particular public office and involve the exercise of personal deliberation and judgment in deciding whether to perform a particular act, or how, and in what manner, that act should be performed. *D.M. v. National School Bus Service*, 305 lll.App.3d 735, 713 N.E.2d 196, 200 (2d Dist. 1999)(dismissal affirmed where court concluded that placing school children on particular buses was discretionary conduct). As noted in Weiss' memorandum supporting her motion to dismiss the amended complaint, Circuit Clerks are regularly granted qualified immunity for making discretionary policy decisions in the course of their jobs. (*See* Doc. 32 at 20)(citing *McMurry v. Sheahan,* 927 F. Supp. 1082 (N.D. Ill. 1996); *McKay v. Kusper*, 252 Ill. App. 3d 450, 624 N.E.2d 1140 (1st Dist. 1993)).

The claim in the instant case is no different, as it is premised on Weiss' decision as Circuit Clerk regarding how to control the internal operations of her public office, and how to protect the public funds within it, when faced with an independent report that Stevens had large bookkeeping discrepancies. (SMF ¶¶23-26). In this instance Weiss, as the head of her department, had to use her discretion to balance interests concerning departmental safety, the safety of public funds and the protection of her suspected employee, Stevens. When faced with this choice, unique to her role as

Circuit Clerk, Weiss weighed the credibility of what Goodin had told her and exercised her discretion by sharing Goodin's report of Stevens' discrepancies with authorities. (*Id*). Because under the Tort Immunity Act public employees have absolute immunity for such discretionary policy determinations when taken in the course of their employment, Weiss is absolutely immune. *See* 745 ILCS 10/2-201.

**IV. Alternatively, Summary Judgment Should Be Entered on Stevens' §1983 Claims in Counts I and II Because Probable Cause Existed**

Assuming *arguendo* that Weiss was found not to have qualified immunity, Stevens' §1983 claims still fail because probable cause existed. The Seventh Circuit held that the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution. *Biddle v. Martin*, 992 F.2d 673, 678 (7th Cir. 1993); *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989). Even malicious motives for arresting the plaintiff do not overcome the preclusion of §1983 claims for false arrest, false imprisonment and malicious prosecution when probable cause exists. *Mark v. Furay*, 769 F.2d 1266, 1268-69 (7th Cir. 1985).

Probable cause is defined as "a state of facts that would lead a person of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged." *Reynolds v. Menard, Inc.*, 365 Ill. App. 3d 812, 820, 850 N.E.2d 831, 837 (1st Dist. 2006). Courts look to the totality of the circumstances when considering whether probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 231, 103 S. Ct. 2317 (1983). The belief that the individual committed the crime

for which she is being accused must only be reasonable, it need not be correct. *Texas v. Brown*, 460 U.S. 730, 742 (1983). Furthermore, the existence of probable cause turns on the information known to the officers at the moment the arrest is made, not on subsequently received information. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 2000).

No one involved in this lawsuit, including Stevens, disputed that a large amount of money was discovered missing or unaccounted for from the Circuit Clerk's office. (Doc. 30, ¶¶16-18). This fact alone provided probable cause that someone close to the money, such as the bookkeeper, might have taken it. After Weiss contacted ASA Killian regarding the discrepancy that was found, both ASA Killian and Trooper Buehnerkemper acquired additional information that led to Stevens' arrest and to SA Koritz filing charges against her. (*See* Doc. 60 at 21-25; SMF ¶¶60, 70). By Stevens' own admission, the missing money was still missing at the time of her arrest in May 2009 and was not found, or thought to be found, until almost a year later. (Doc. 30, ¶¶18, 26).

As discussed in Defendant Buehnerkemper's memorandum supporting his motion for summary judgment, Stevens waived her right to a preliminary hearing, which essentially means that she admitted that probable cause existed. (Doc 60 at 17-19; *see also* SMF ¶¶71-72). The accumulation of circumstantial evidence acquired over time by Trooper Buehnerkemper and ASA Killian, including the CPA's report confirming the discrepancy first identified by Goodin and incriminating statements by Stevens' daughter that Stevens brought home a money bag from work, coupled with Stevens' waiver of her preliminary hearing, resulted in probable cause for the arrest,

imprisonment and prosecution of Stevens. Summary judgment should therefore be granted on Stevens' §1983 claims against Weiss.

## V. Alternatively, Summary Judgment Should Be Entered on Count III Because Stevens Failed to Establish All of the Prongs of a Malicious Prosecution Claim.

If this court should find that Weiss is not entitled to public official immunity, Count III also fails because Stevens cannot establish all of the prongs of a malicious prosecution claim. To support a claim for malicious prosecution under Illinois law, the plaintiff must establish that: (1) the defendant commenced or continued an original criminal or civil proceeding; (2) the proceeding terminated in the plaintiff's favor; (3) the defendant instituted the proceeding without probable cause; (4) the defendant acted maliciously in initiating or continuing the proceeding; and (5) the plaintiff was injured. *Curtis v. Bembenek*, 48 F.3d 281, 286 (7th Cir. 1995)(internal citations omitted); *Swick v. Liautaud*, 169 Ill. 2d 504, 662 N.E.2d 1238, 1242 (Ill. 1996)(internal citations omitted).

### A. Weiss Did Not Commence the Prosecution Against Stevens or Knowingly Provide False Information

Stevens cannot satisfy the first prong of a malicious prosecution claim, as Defendant Weiss did not commence the prosecution against Stevens or knowingly provide false information. Weiss went to ASA Killian for advice after learning that Stevens had an $80,000 discrepancy in the books of the Clerk's Office. "[A] person who unwittingly gives a prosecuting officer false information of another person's alleged crime is not liable for malicious prosecution, unless the person takes an active part in instituting criminal proceedings, by requesting, directing, or pressuring the

prosecuting officer into instituting the proceedings. *Allen v. Berger*, 336 Ill. App. 3d 675, 678 (1st Dist. 2002). However, as this court noted in its opinion on defendants' motion to dismiss the amended complaint, if a person knowingly gives false information to an officer they can be deemed responsible for the damages from prosecution that may result. Doc. 38 at 30 (citing *Randall v. Lemke*, 311 Ill.App.3d 848, 851 (2000); *Allen*, 336 Ill. App. 3d at 678); *see also Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill.App.3d 340, 346, 733 N.E.2d 835, 840, (2000). Yet, even if a person provides false information to authorities, if the prosecution is commenced based on independent or other attenuated information, the original source is deemed not to have commenced the prosecution. *Randall*, 311 Ill.App.3d at 851.

As discussed *supra* in II, Stevens provided no evidence, other than her own speculation, that Weiss reported Stevens' mismanagement of the Circuit Clerk books in bad faith. In fact, the information Weiss provided was never actually discredited as Stevens was not found innocent; the charges against Stevens were simply dismissed by the State's Attorney's office for a lack of direct evidence. (SMF ¶¶73-74). Moreover, Weiss only provided this information to ASA Killian. (*Id.* at ¶¶26, 46). Weiss was not involved in the decision to prosecute, nor did she even ask or encourage ASA Killian or ASA Koritz to prosecute Stevens. (*Id.* at ¶¶49, 63-69).

Lastly, like in *Randall v. Lemke*, the state's investigation proceeded after Weiss' initial reporting and Stevens was arrested and charges were filed based on information gathered independently by the State Police and the State's Attorney's Office. (SMF ¶¶27-28, 31, 33-38, 50, 60). Therefore, even if Weiss did unwittingly provide false

information to ASA Killian, because Weiss did not take an active part in instituting criminal proceedings and because any information she provided was not the reason why Steven's prosecution was commenced, Stevens has failed to satisfy the first prong of a malicious prosecution claim against Weiss. *Allen*, 336 Ill. App. 3d at 678; *Curtis*, 48 F.3d at 286. Summary judgment on Count III is therefore proper. *Swick v. Liautaud*, 169 Ill. 2d 504, 662 N.E.2d 1238, 1242 (Ill. 1996).

**B. Weiss Did Not Institute the Proceeding or Act With Malice in So Doing, and the State's Attorney's Office Had Probable Cause to Institute the Proceedings.**

Under prongs three and four of a malicious prosecution claim a plaintiff must establish that the defendant instituted the proceeding without probable cause; and that the defendant acted maliciously in initiating or continuing the proceeding. *Curtis*, 48 F.3d at 286. Stevens cannot satisfy prongs three and four of a malicious prosecution claim because as discussed *supra* in V(A), Weiss did not initiate or continue the proceeding. Moreover, as discussed *supra* in IV, the State's Attorney's Office and Trooper Buehnerkemper, who did institute the proceedings against Stevens, had probable cause to do so. Lastly, even if Weiss were considered to have initiated the proceedings against Stevens, the record reflects that Weiss acted in good faith and with probable cause when she provided information to police.

The element of malice may be inferred from a total lack of probable cause, from the failure to make a reasonable or suitable inquiry, and from a showing of personal animosity." *Reynolds v. United States*, 549 F.3d 1108, 1115 (7th Cir. 2008)(internal citations omitted). Even if malice is assumed from focusing an investigation on only one

subject, if the investigation uncovers sufficient evidence of an individual's guilt, it would not matter whether the suspect is arrested or prosecuted out of ill will or the purest motives. *King v. Burlington N. & Santa Fe Ry.*, 538 F.3d 814, 819 (7th Cir. 2008). It follows that the existence of probable cause bars a claim for malicious prosecution under Illinois common-law theory. *Porter v. City of Chicago*, 393 Ill. App. 3d 855, 866, 912 N.E.2d 1262, 1271 (1st Dist. 2009)(citing *Turner v. City of Chicago*, 91 Ill. App. 3d 931, 934, 415 N.E.2d 481 (1st Dist. 1980). The Illinois legislature codified this rule with regard to public employees in Section 2-208: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause. 745 ILCS 10/2-208.

As discussed *supra* in IV, Stevens waived her right to a preliminary hearing, which essentially meant that she admitted that probable cause existed. (Doc 60 at 17-19; *see also* SMF ¶¶71-72). The Illinois State Police investigation of Stevens also revealed a plethora of information to create the probable cause that warranted arresting and charging Stevens. (*See* Doc. 60 at 21-25). Even if Stevens was not estopped from contesting this issue, simply pointing to the fact that the charges against Stevens were dropped over a year later is not a material fact sufficient to contradict the state authorities' probable cause to charge and arrest her. *Deng v. Sears, Roebuck and Co.*, 552 F.3d 574, 576-77 (7th Cir. 2009)(summary judgment dismissing malicious prosecution claim against employer affirmed because probable cause for the charges against plaintiff existed despite the fact that prosecutors later dismissed the charges).

If this court should find that Weiss initiated the proceedings against Stevens, like the state authorities who actually initiated the charges against her and carried out her arrest, it should also find that Weiss acted in good faith and with probable cause when she provided ASA Killian with the initial findings of Goodin's report concerning Stevens' suspected theft from the Circuit Clerk's office. (SMF ¶26). Goodin had conducted a detailed examination of the Circuit Clerk books and spent time training Stevens, who was in charge of the bookkeeping, and asked her about the deposit discrepancies in the books. (*Id.* at ¶¶13-25). Based on her examination of the Clerk's Office books and Stevens' reaction to the discrepancies, Goodin recommended to Weiss that "she would not want to have this employee return to her service until a proper investigation had been performed." (*Id* at ¶25). From the information that Goodin provided to Weiss, and Goodin's opinion of Stevens' suspicious behavior, it was reasonable for Weiss to suspect Stevens of theft and to report this discrepancy to state authorities.

Stevens failed to establish any evidence that Goodin's inquiry into the deposit receipts was not a reasonable basis upon which Weiss could inform authorities of their suspicions about Stevens. The record also does not support that Weiss had any personal animosity towards Stevens and Weiss knew nothing about Stevens' thoughts of running for Circuit Clerk. (*Id.* at ¶67). Stevens also provided no evidence to substantiate her allegation that Weiss sought to have her arrested "to shift blame for the potential political embarrassment spurring from [the] improperly kept books," especially since Weiss retired in December 2008 she was no longer the Circuit Clerk at

the time of Stevens arrest, incarceration, and release. (*Id.* at ¶¶57, 69). That Weiss only suspected Stevens of the theft of county funds is not enough to support malice, especially when the information Goodin provided to Weiss supported probable cause to suspect Stevens. *King*, 538 F.3d at 819. Summary judgment is therefore appropriate for Stevens' malicious prosecution claim against Weiss. *Porter*, 393 Ill. App. 3d at 866 (citing *Turner*, 91 Ill. App. 3d at 934).

WHEREFORE, Defendant Kathy Weiss requests that this Court grant her motion for summary judgment on all counts and grant any other relief the court deems just and proper.

**KATHY WEISS**

By: *s/Karin L. Anderson*
One of Her Attorneys

Julie A. Bruch, #6215813
Karin L. Anderson, #6277014
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Fax: (847) 291-9230
E-mail: jbruch@okgc.com
E-mail: kanderson@okgc.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| SUSAN STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 11-CV-3162 |
| v. | ) | |
| | ) | |
| DEWITT COUNTY, ILLINOIS; KATHY WEISS, in her official and individual capacities; ANDREW KILLIAN, in his official and individual capacities; RYAN BUEHNERKEMPER, in his official and, individual capacities; and DICK KORITZ, in his official and individual capacities, | ) | Judge Susan E. Myerscough<br>Magistrate Judge Byron Cudmore<br>Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2013, I electronically filed Defendant Kathy Weiss' Memorandum of Law in Support of Her Motion for Summary Judgment with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the registered CM/ECF participant(s):

| | | |
|---|---|---|
| David L. Blunt | Brent W. Welder | Rex L. Gradeless |
| Blunt Slocomb, Ltd. | Blunt Slocomb, Ltd. | Assistant Attorney General |
| michaelb@bluntlaw.com | bwelder@bluntlaw.com | rgradeless@atg.state.il.us |

**KATHY WEISS**

By: *s/Karin L. Anderson*

Karin L. Anderson, #6277014
O'Halloran Kosoff Geitner & Cook, LLC
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
Telephone: (847) 291-0200
Fax: (847) 291-9230
e-mail: kanderson@okgc.com