IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| SUSAN STEVENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  11-3162 |
| | ) | |
| KATHY WEISS and RYAN | ) | |
| BUEHNERKEMPER, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This cause is before the Court on Defendant Ryan Buehnerkemper's Motion for Summary Judgment (d/e 59), Defendant Kathy Weiss' Motion for Summary Judgment (d/e 66), and Defendant Weiss' Motion for Sanctions Under Rule 11 and 28 U.S.C. § 1927 (d/e 55).  For the reasons that follow, Defendants are awarded summary judgment on Plaintiff Susan Stevens' § 1983 claims for false arrest and false imprisonment (Counts I and II).  Further, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law malicious

prosecution claim (Count III).  Finally, Defendant Weiss' Motion for Sanctions (d/e 55) and Plaintiff's request for sanctions made in her response to Defendant Weiss' Motion for Sanctions are both DENIED.

## I.  INTRODUCTION

On March 23, 2007, Plaintiff Susan Stevens was terminated from her employment as deputy clerk and bookkeeper in the DeWitt County Circuit Clerk's office.  On May 13, 2009, Plaintiff was arrested for theft over $100,000 and official misconduct.  On May 15, 2009 and May 19, 2009, charges of theft and official misconduct were filed against Plaintiff. On August 17, 2010, all charges against Plaintiff were dismissed with prejudice.

On May 16, 2011, Plaintiff filed suit against Defendant Weiss, who was the DeWitt County Circuit Clerk until November 30, 2008; Defendant Buehnerkemper, the Illinois State Trooper who investigated the case; Defendant Andrew Killian, a DeWitt County Assistant State's Attorney from February 2003 to July 3, 2008; Defendant Richard Koritz, the DeWitt County State's Attorney beginning December 1, 2008; and

DeWitt County. This Court has already dismissed the claims against Killian, Koritz, and DeWitt County. <u>See</u> Opinions (d/e 27, 38).

The remaining claims in this lawsuit are a § 1983 claim for false arrest, a § 1983 claim for false imprisonment, and a state law claim for malicious prosecution against Defendants Buehnerkemper and Weiss. Plaintiff alleges that shortly after she told fellow employees that she was considering a run for Circuit Clerk when Defendant Weiss retired, Defendant Weiss fired Plaintiff and started a false and malicious criminal prosecution against Plaintiff that led to her arrest, imprisonment, and prosecution. Plaintiff alleges Defendant Weiss' actions were made under color of state law when she was Circuit Clerk. After Weiss' retirement, Weiss' actions were taken in concert with other state actors, such as the prosecutors, Defendant Buehnerkemper, and the newly elected Circuit Clerk Lori Berger.

Plaintiff also alleges that Defendant Buehnerkemper arrested her without probable cause. According to Plaintiff, Defendant Buehnerkemper accumulated no credible evidence that any money was missing or that Plaintiff had committed any crime.

In March 2013, Defendants Weiss and Buehnerkemper filed separate motions for summary judgment. Defendant Weiss also filed a Motion for Sanctions. On July 29 and July 30, 2012, the Court heard oral argument on the motions for summary judgment. Plaintiff requested oral argument on the Motion for Sanctions. That request is denied.

## II. LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Once the movant has met his burden, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." Warsco v. Preferred Technical Group., 258 F.3d 557, 563 (7th Cir. 2001).

Moreover, facts must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn for the non-movant.  See Trentadue v. Redmon, 619 F.3d 648, 652 (7th Cir. 2010).  The Court's role "is not to evaluate the weight of the evidence, to judge the credibility of the witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact."  Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001).

## III.  FACTS

A.   Plaintiff's Job Duties Included Keeping the Manual Ledger and Depositing Money in the Bank

Plaintiff began working in the DeWitt County Circuit Clerk's office in August 1983.  She was terminated on March 23, 2007.  At the time of her termination, Plaintiff was a deputy clerk and the bookkeeper.  She made bank deposits, kept track of the daily ledger, kept the general ledger, and made the payouts at the end of the month.

Plaintiff testified that, every day she was at work, she was responsible for making the deposits into the bank.  However, other employees, including Defendant Weiss, sometimes made the deposits.

The office did not have a rule that required that deposits be made the next business day.

All of the employees in the Clerk's office had access to the checks, the Judicial Information Management System (JIMS), and the vault. Plaintiff testified that other employees in the office had access to the manual ledger because it was kept at her desk and was not "locked up or hidden." However, Plaintiff did not know if anyone ever accessed it to modify it in any way.

B.   Kayte Goodin Tells Defendant Weiss that She Has Concerns About the Bookkeeping

On March 22, 2007, Kayte Goodin, a computer software trainer, went to the Circuit Clerk's office at Defendant Weiss' request to transfer the county books from the manual bookkeeping system to JIMS. Goodin is not an accountant.

At the end of the day, Goodin went to Defendant Weiss and asked her for the December bank statements. Goodin was concerned about inaccurate information Plaintiff had given Goodin regarding the December checks and about Plaintiff's behavior.

The next day, March 23, 2007, Goodin spoke with Defendant Weiss and prepared a letter outlining what Goodin found.  In the letter, Goodin stated:

> When comparing a bank statement to circuit clerk reports, it should be very easy to see that the money came in on one day and either got deposited on that day or perhaps the next morning.  In some counties you may be able to see that two daily totals were combined into one deposit (a practice that I highly discourage when training) but even so, it is usually easy to see where two daily totals add up to a certain deposit that was made shortly afterward.  When the clerk and I reviewed the bank statement for December, we found that none of the deposit totals added up to what should have been deposited for a given day.  We then looked at a couple of other bank statements and found the same thing – none of them matched up with the daily totals in the computer.

> On March 23, 2007 I looked further into this and found that I could locate a specific deposit amount eventually, but that the money that came in one day may not have actually been deposited until days, weeks and sometimes even months later. I am attaching some reports that show my scribbles where I documented when the amount of the deposit didn't match and also make note of the dates that the deposits were actually made.

C.    Defendant Weiss Contacts the Assistant State's Attorney and Terminates Plaintiff's Employment

That same day, Defendant Weiss and Goodin went to speak to Assistant State's Attorney (ASA) Andrew Killian.  Before doing so,

Defendant Weiss did not look at any records, did not speak to Plaintiff, and did not contact Larry Allison of Allison & Associates, who had audited the office books for decades.  Weiss asked ASA Killian to conduct an investigation on her behalf.  She also told ASA Killian that she believed money was missing from the Circuit Clerk's office and that Plaintiff was responsible for the missing funds.

Weiss also terminated Plaintiff's employment.  The Sheriff's office secured the books and Plaintiff's work area.

D.    ASA Killian Contacts the Illinois State Police

On March 27, 2007, ASA Killian contacted the Illinois State Police to request assistance concerning potential embezzlement by Plaintiff. Defendant Buehnerkemper was assigned to investigate the matter.

Defendant Buehnerkemper testified that his supervisor told him they were not going to take the case unless a "forensic audit" was done. Defendant Buehnerkemper testified he did not know the definition of a forensic audit.

E.     Kent Kull is Hired to Conduct an "Agreed Upon Procedures," and
       Kull Prepares a Report

The DeWitt County Board hired Kent Kull, an accountant with

Mose, Yockey, Brown & Kull, to conduct an "Agreed Upon Procedures"

of the books.  (Kull testified that an Agreed Upon Procedures is a lower

level of service than an audit.)

On June 1, 2007, Kull submitted a report (the Kull Report) based

on the Agreed Upon Procedures he conducted.  In the Kull Report, Kull

compared daily voucher report totals per JIMS (which would have

recorded money received by Circuit Clerk personnel) to bank deposits for

the time period of January 1, 2004 to March 22, 2007.  Kull also

compared the date per the daily voucher report to the date a deposit

cleared the bank.  Of the 810 deposits made between January 1, 2004

through March 22, 2007, 101 of those were not made within one week

of the business date.  One deposit was not made until 61 days later.

Kull also found 272 deposit discrepancies totaling $83,518.20 and

five missing deposits totaling $31,202.83.  The Kull Report provided:

> For the majority of identified differences, manual alterations
> to the daily voucher report were noted.  Generally, the bank
> deposit amount was less than the deposit total per the daily

voucher report by an amount equal to the manual alteration.
In addition, we noted the deposit amount recorded in the
manual subsidiary cash receipts journal maintained by Ms.
Stevens reflected the altered deposit total per the daily
voucher report and the bank deposit amount.  In some
instances, the daily voucher report was not altered but the
bank deposit was less than the deposit total per the daily
voucher report.  In those instances, the deposit amount
recorded in the manual subsidiary cash receipts journal
reflected the bank deposit amount.  Additionally, we noted
five deposit totals per daily voucher reports from February
and March 2007 for which deposits have not cleared the bank
through the date of our procedures nor has the deposit
support been located on-site.

The Report also contains the language that:

The sufficiency of these procedures is solely the responsibility
of the Finance Committee of the DeWitt County Board. We
make no representation regarding the sufficiency of the
procedures performed either for the purpose for which this
report has been requested or any other purpose.

Kull testified that in his Report, he assumed the JIMS receipts were

accurate.  He admitted that whether money was missing depended on the

accuracy of JIMS.  Plaintiff asserts the records were kept manually and

not on JIMS and JIMS was not integrated with the manual system.

Defendant Buehnerkemper testified that while he was sure he read

the Kull Report during his investigation, he did not read it "word for

word," he never made an extensive review of the document, and he did

not go through each line of the report looking for key words (which was his definition of "skimming" a document).

F.     Defendant Buehnerkemper Testifies Before the Grand Jury

In June 2007, after receiving the Kull Report, ASA Killian turned the matter over to the Illinois State Police.  Killian did not hear back from the Illinois State Police until 2008.  Killian testified the reason for the delay was that Defendant Buehnerkemper had been assigned other duties and the case was shelved.

In February or March of 2008, Defendant Buehnerkemper indicated he needed financial records to move forward with the investigation.

On March 27, 2008, Defendant Buehnerkemper testified before the grand jury seeking subpoenas to obtain Plaintiff's financial records. During the leading examination by ASA Killian, Defendant Buehnerkemper answered yes when asked: (1) whether Weiss told him she believed there was an $80,000 discrepancy; (2) that Plaintiff was the only one with access to the manual ledger; (3) that a forensic audit is a more detailed audit of income and expenses that attempts to track not

only where the money comes from but where it goes; (4) that a forensic audit was conducted; and (5) the forensic audit determined there was approximately $83,000 missing and approximately $31,000 unaccounted for or never deposited. Plaintiff alleges that all of this information was false.

The grand jury issued the subpoenas for Plaintiff's financial records. Defendant Buehnerkemper testified that none of the information received in response to the subpoenas led him to believe that Plaintiff had stolen money from the clerk's office. The financial information received showed that Plaintiff had 170 overdrafts on her personal checking account between August 13, 2004 and October 16, 2007 and cash deposits of $8,904. Plaintiff and her husband filed for bankruptcy in March 2007. However, Plaintiff testified that this was not because of their personal financial situation but because their business, Bud Liquors, had failed.

G.    Defendant Buehnerkemper Conducts Interviews

Defendant Buehnerkemper conducted numerous interviews, including interviews of Kent Kull, Larry Allison, and Defendant Weiss.

Plaintiff claims, and the Court accepts as true, that Defendant Weiss made false statements to Defendant Buehnerkemper during the interviews.  For example, Defendant Weiss told Defendant Buehnerkemper that Plaintiff was the only one with access to the money in the Circuit Clerk's office when, in fact, all of the employees had access to the money and the vault.  Defendant Weiss also told Defendant Buehnerkemper that Weiss had only made deposits at the bank a couple of times when she had actually done so much more frequently.  In addition, Defendant Weiss falsely told Defendant Buehnerkemper that Goodin had found $80,000 missing when Goodin made no such finding.

On August 1, 2008, Defendant Buehnerkemper interviewed Kull. Kull told Defendant Buehnerkemper that Kull was not a forensic auditor and that he had not conducted a forensic audit.  (In fact, Kull testified he was not aware of the definition of a forensic audit.)  Therefore, Defendant Buehnerkemper knew as of August 1, 2008 that a forensic audit had not been performed.

During an August 1, 2008 interview, Kull told Defendant Buehnerkemper that: (1) there were discrepancies between the

transactions recorded in JIMS and the amounts deposited into the bank;

(2) Plaintiff made the cash deposits unless she was absent from work;

and (3) on the days Plaintiff was absent, the deposits were accurate and

timely.  Defendant Buehnerkemper also interviewed Kull on April 9,

2009.  During that interview, Kull provided Defendant Buehnerkemper

with a summary of his findings of an audit of the Circuit Clerk's office

records for the year after Plaintiff's termination (March 2007 through

March 2008).  Kull found the office was $3 short during that time

period.[1]

In December 2008, Defendant Buehnerkemper spoke to Larry

Allison of Allison & Associates, the firm that performed the Circuit

Clerk's yearly audits.  Allison had never found a discrepancy in the

books.  Allison believed that $100,000 was a substantial amount of

money and that he would have caught it.  Allison also pointed out that if

a person were taking a small amount of money before November 2005, it

was possible he did not catch it because the firm randomly selected

---

[1] It appears that by this time the Clerk's office was using JIMS for the bookkeeping.

transactions to trace.  If by chance the firm did not select the transaction

the person took money from, the firm would not have discovered it.

Allison also told Defendant Buehnerkemper that he had not had

access to most of the records he needed to conduct his audit in 2006 and

2007.  This caused him to issue two negative assurance reports.  Allison

told Defendant Buehnerkemper that for the months he tested in 2006

and 2007, he found discrepancies of $100 to $300 in the totals listed on

the daily deposit slips and the amounts deposited into the bank

statements.  Allison could not determine the source of the discrepancies.

On some days, there were no discrepancies.  Allison later told Koritz that

the discrepancies could have been from inaccurate records or from the

newly installed software.

H.    Defendant Buehnerkemper Interviews and Arrests Plaintiff

On May 13, 2009, Defendant Buehnerkemper interviewed

Plaintiff.  That interview is recorded.  Exhibit 10 (d/e 60).

During the interview, Plaintiff stated that in the months before she

was terminated, the office had been short-handed and Plaintiff had fallen

behind in her work.  Plaintiff stated that each clerk was responsible for

her own drawer.  At the end of the day, Plaintiff received the money and

deposited it.  However, Defendant Weiss would deposit the money when

Plaintiff was on vacation—she had four weeks of vacation a year—or

when Plaintiff was otherwise absent.  Plaintiff denied taking any money

from the clerk's office.  At the conclusion of the interview, Defendant

Buehnerkemper arrested Plaintiff.

Defendant Buehnerkemper completed a "Declaration and

Determination Probable Cause for Arrest Without Warrant" Form.  On

that Form, he listed the following facts in support of his belief that a

crime had been committed:

> In violation of the Illinois Complied Statutes, said defendant
> took funds from the Dewitt County Circuit Clerk[']s Office
> without permission when she was employed as Deputy Circuit
> Clerk.  A forensic audit was performed on the Dewitt County
> Circuit Clerk[']s Office's account records.  MYB&K's audit
> encompasses from January 1, 2004 until SUSAN K.
> STEVENS' last day of employment.  MYB&K can identify
> $83,518.20 in deposit discrepancies and another $31,202.83
> in unaccounted for money for a total of $114,721.03 in
> missing monies from January 1, 2004 until STEVENS' last
> day.  STEVENS was responsible for making deposits into the
> Circuit Clerk['] s bank account.

I.      Plaintiff is Charged by Information

On May 15, 2009, Plaintiff was charged by Information with Theft (Count 1) (720 ILCS 5/16-1(a)(1)(A)) and Official Misconduct (Count 2) (720 ILCS 5/33-3(b)).  On May 19, 2009, she was charged by Information with Theft (Count 3) (720 ILCS 5/16-1(a)(1)(A)), Official Misconduct (Count 4) (720 ILCS 5/33-3(b)), and Official Misconduct (Count 5) (720 ILCS 5/33-3(b)).  On May 29, 2009, Counts 1 and 2 were dismissed.

Defendant Weiss was present at Plaintiff's arraignment.  On May 29, 2009, Plaintiff appeared in court and waived her right to a preliminary hearing.  She also posted bail on May 29, 2009 and was released.

J.      In August 2010, the Charges Against Plaintiff are Dismissed

In August 2010, Koritz moved to dismiss the charges against Plaintiff with prejudice.  When asked during his deposition why the charges were dismissed, Koritz mentioned a number of things.

Koritz testified that a forensic audit had not been done and it would cost $45,000 to $55,000 for such an audit.  Koritz also stated that

Allison, one of the auditors who had conducted audits of the Circuit Clerk's books during Plaintiff's employment, stated that the amounts alleged to be stolen were in excess of anything his firm's audits would support. Koritz testified this conversation occurred after charges were filed.

Koritz further testified that he had received information a few weeks before the charges were dismissed that bore on the credibility of the new Circuit Clerk, Lori Berger. This included "some issues ongoing with some bonds" and documentation suggesting that Berger used a deceased judge's signature stamp on a document. Berger's credibility affected the case because she was one of the people who had access to the financials. Koritz passed the information about the use of the judge's stamp to a special prosecutor, as well as information about other issues as well.

The other issues included complaints by two former employees of the Circuit Clerk's office, Brenda Clark and Lisa Richards, that documents were being shredded in the Clerk's office by Weiss and Berger. The shredding allegedly occurred in 2009 and 2010.

Clark also told Koritz that Clark did not believe the books were always straight and there were discrepancies.  Clark's affidavit indicates she worked at the Circuit Clerk's office from August 2008 to August 2010 and then again beginning December 2012.

Koritz claims everything that changed the posture of the case occurred after charges were filed.  The record shows that Defendant Buehnerkemper did not speak to Berger until June 9, 2009 and did not speak to Brenda Clark until June 22, 2009 – after Plaintiff's arrest.

## IV.  ANALYSIS

A.    Defendants are Entitled to Summary Judgment on Counts I and II Because Probable Cause Supported the Arrest

The parties treat the false arrest and false imprisonment claims together, so the Court will as well.  "The existence of probable cause to arrest is an absolute defense to any § 1983 claim for false arrest or false imprisonment."  Abbott v. Sangamon County, 705 F.3d 706, 713-14 (7th Cir. 2013).  Probable cause exists when the facts and circumstances within the officer's knowledge would warrant a reasonable person to believe that the arrestee committed, is committing, or is about to commit an offense.  Id. at 714; see also Michigan v. DeFillippo  443 U.S. 31, 37

(1979).  Whether an arrest is supported by probable cause is usually a question of fact decided by the jury.  Abbott, 705 F.3d at 714.  However, if the underlying facts are undisputed, the court can make that decision on summary judgment.  Abbott, 705 F.3d at 714.

"Probable cause requires only that a probability or a substantial chance of criminal activity exist."  Purvis v. Oest, 614 F.3d 713, 722-23 (7th Cir. 2010).  "The evidence need not show that the officer's belief is more likely true than false."  Purvis, 614 F.3d at 723.  The inquiry is an objective one, and the officer's subjective state of mind is irrelevant.  Abbott, 705 F.3d at 714.

The existence of probable cause depends on the elements of the criminal offense for which Plaintiff was arrested.  Abbott, 705 F.3d at 715.  However, an arrest can be supported by probable cause that the arrestee committed any crime.  Abbott, 705 F.3d at 715.

In this case, Plaintiff was arrested for theft over $100,000 (720 ILCS 5/16-1(a)(1)(A) (West 2008)) and official misconduct (720 ILCS 5/33-3(b)).  A public employee commits official misconduct when, in her official capacity, she knowingly performs an act she knows she is

forbidden by law to perform.  720 ILCS 5/33-3(b).  In this case, the act

Plaintiff allegedly knew she was forbidden by law to perform was theft.

See People v. Moshier, 312 Ill. App. 3d 879, 882 (2000) (finding that

the knowledge element for the official misconduct offense was not a

separate act as charged; because the theft and official misconduct

convictions were based on the same act, both convictions could not stand

under the one-act, one crime doctrine).

The version of the theft statute in effect when Plaintiff was arrested

provided that a person commits theft when she knowingly obtains or

exerts unauthorized control over property of the owner and intends to

deprive the owner permanently of the use or benefit of the property.  720

ILCS 5/16-1(a)(1)(A) (West 2008).  In order to sustain a conviction for

theft under section 16–1(a)(1), the State must establish that "(1) the

defendant obtained or exerted control over another's property, and (2)

the control was unauthorized." People v. Graves, 207 Ill.2d 478, 483–84

(2003).

The penalty for theft depends on the amount of money taken.

Theft of property not from the person and (1) not exceeding $300 is a

Class A misdemeanor; (2) exceeding $300 and not exceeding $10,000 is a Class 3 felony unless the theft was of governmental property, in which case the offense is a Class 2 felony; (3) exceeding $10,000 but not exceeding $100,000 is a Class 2 felony unless the theft was of governmental property, in which case the offense is a Class 1 felony; and (4) exceeding $100,000 but not exceeding $500,000 is a Class 1 felony, unless the theft was of governmental property, in which case the offense is a Class X felony. 720 ILCS 5/16-1(b)(1), (b)(4), (b)(4.1), (b)(5), (b)(5.1), (b)(6), (b)(6.1).

In this case, Kull noted discrepancies between JIMS and the bank records totaling over $80,000 and missing deposits of over $30,000. The record is unclear whether those missing deposits of $30,000 were ever accounted for or whether anyone even looked to see if the deposits were eventually reflected in the bank statements.

However, as the penalty structure shows, this lack of clarity as to the amount of the discrepancy is immaterial for purposes of probable cause. Therefore, the Court will determine whether the undisputed facts and facts taken in the light most favorable to Plaintiff demonstrate as a

matter of law that probable cause existed to arrest her for theft of any amount. See Tebens v. Mushol, 692 F.3d 807, 816 (7th Cir. 2012) ("The Fourth Amendment permits an arrest for any conduct constituting a criminal offense, even a minor one, under state law"); Abbott, 705 F.3d at 715 (an arrest can be supported by probable cause that the arrestee committed any crime).

The parties refer to evidence obtained before and after the arrest in support of their respective arguments. However, the Court must focus on what the officer knew at the time. Abbott, 705 F.3d at 714. Qian v. Kautz, 168 F.3d 949, 953-54 (7th Cir. 1999) ("[T]he fact that the officer later discovers additional evidence unknown to her at the time of the arrest is irrelevant to whether probable cause existed at the crucial time"). The Court then determines whether the undisputed facts and circumstances amount to probable cause when viewed from the standpoint of an objectively reasonable police officer. Abbott, 705 F.3d at 714. "[O]nce an officer learns sufficient trustworthy information establishing probable cause, he is entitled to rely on what he knows in pursuing charges or an arrest, and is under no further duty to

investigate." <u>Beauchamp v. City of Noblesville, Ind.</u>, 320 F.3d 733, 744 (7th Cir. 2003).

1. <u>Fact that Defendant Buehnerkemper Misrepresented the Nature of the Agreed Upon Procedures is Immaterial if Probable Cause Otherwise Supported the Arrest</u>

Plaintiff argues that the fact that Defendant Buehnerkemper made false statements under oath—at the grand jury proceeding and in his affidavit in support of the warrantless arrest—raises fact issues as to whether his affirmation under oath for the warrantless arrest was so untruthful or so lacking in indicia of probable cause that no reasonable competent officer would have concluded that Plaintiff should have been arrested.

In particular, Defendant Buehnerkemper represented in the Declaration and Determination Probable Cause for Arrest Without Warrant Form that a forensic audit had been performed when that was not true. The only analysis conducted by an accountant was the Agreed Upon Procedures performed by Kull, which resulted in the Kull Report. Plaintiff also asserts that Defendant Buehnerkemper failed to correct the key information that no forensic audit had been conducted. As for

Defendant Weiss', Plaintiff asserts that Weiss gave false information to Defendant Buehnerkemper.

If a finding of probable cause is based on a defendant's intentional misrepresentation or concealment of material facts, a plaintiff may be able to proceed on a Fourth Amendment claim challenging the arrest. Schertz v. Waupaca County, 875 F.2d 578, 582 (7th Cir. 1989) (noting the possibility that probable cause based on intentional misrepresentation or concealment can support a Fourth Amendment claim but finding the plaintiff did not claim that the defendants concealed or misrepresented facts known to them).  However, if probable cause exists independent of any misrepresentation or concealment, the claim for false arrest fails.  See Myles v. Laterzo, 2009 WL 1437574, at *4 (N.D. Ind. 2009); see also, e.g., Betker v. Gomez, 692 F.3d 854, 862 (7th Cir. 2012) (involving search warrant and holding: "We eliminate the alleged false statements, incorporate any allegedly omitted acts, and then evaluate whether the resulting 'hypothetical' affidavit would establish probable cause"); Olson v. Tyler, 771 F.2d 277, 281 (7th Cir. 1985) ("If an officer submitted an affidavit that contained statements he knew to be

false . . . and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he cannot be said to have acted in an objectively reasonable manner") (emphasis added).

Moreover, an officer's subjective motives are immaterial to determining probable cause for an arrest.  See Tebbens, 692 F.3d at 816.

Therefore, this Court must determine whether probable cause existed independent of Defendant Buehnerkemper's misrepresentation that a forensic audit was conducted.

2.      The Undisputed Facts Within Defendant Buehnerkemper's Knowledge Support Probable Cause

Kull testified that, while he did not know the definition of a forensic audit, an Agreed Upon Procedures is a lower level of service than a regular audit.  With an audit, the accountant issues an opinion that the records are fairly stated in all material respects.  With an Agreed Upon Procedures, the user of the report draws his or her own conclusions.  See also Kull Report (containing disclaimer language that no representation was made regarding the sufficiency of the procedures performed for any purpose).

However, the evidence supporting probable cause need not be admissible evidence or evidence sufficient to support a conviction. <u>See</u>, <u>e.g.</u>, <u>Matthews v. City of East St. Louis</u>, 675 F.3d 703, 706 (7th Cir. 2012) (evidence supporting probable cause need not be sufficient to support a conviction); <u>Phillips v. Allen</u>, 668 F.3d 912, 915 (7th Cir. 2012) ("evidence need not be admissible at trial in order to support a finding of probable cause"), citing <u>Illinois v. Gates</u>, 462 U.S. 213 (1983). Therefore, Defendant Buehnerkemper did not need a forensic audit to have probable cause to arrest Plaintiff. <u>See</u>, <u>e.g.</u>, <u>Stoltey v</u>. Brown, 283 Fed. Appx. 402 (7th Cir. 2008) (unpublished) (finding that whether the defendant falsely represented in his police report that the plaintiff was homeless was irrelevant to the question of probable cause to arrest plaintiff for criminal trespass).

The issue, then, is whether the Agreed Upon Procedures, which resulted in the Kull Report, would have caused a reasonable person to conclude that a crime was committed.  The Kull Report, which was prepared by an accountant, showed a substantial discrepancy between the amount of money recorded as received on JIMS and the money that

was actually deposited in the bank account and recorded in the manual ledger.  Kull compared the money collected in the Clerk's Office, as reflected in the JIMS daily voucher report, to the amount of money deposited in the bank.  Kull found that the bank deposit amount was generally less than the money reflected on the daily voucher report.

Although Defendant Buehnerkemper admitted he did not read the report "word for word" or go through each line of the report looking for key words (his definition of skimming the report), he also interviewed Kull about his report.  Kull told Defendant Buehnerkemper during the interview that (1) there were discrepancies between the transactions recorded in JIMS and the amounts deposited into the bank; (2) Plaintiff made the cash deposits unless she was absent from work; and (3) on the days Plaintiff was absent, the deposits were accurate and timely.  See, e.g., Woods v. City of Chicago, 234 F.3d 979, 986 (7th Cir. 2000) (statements in arrest report were not hearsay because they were not offered for their truth but to show the effect those statements had on the officers).  In light of this information, information that deposits were not timely made, that alterations to the daily voucher reports were noted,

and that some deposits could not be accounted for, an objectively reasonable person would believe that the discrepancies meant that money was likely missing from the Clerk's Office.

Defendant Buehnerkemper also had probable cause to believe that Plaintiff was the one responsible for the discrepancies and the money believed to be missing. Plaintiff does not dispute that when money came into the Circuit Clerk's office, other employees would issue a receipt from the JIMS and, at the end of the day, those employees would have to balance their drawer and give money and a printout of receipts to Plaintiff. Pl. Resp., p. 6 (d/e 71). Plaintiff also does not dispute that part of her job was to check that the money the employees gave her in relation to the receipts printout and determine when mistakes had been made by other employees and on several days was tasked with making a deposit in the bank. Pl. Resp. p. 6.

In addition, during Plaintiff's interview, Plaintiff told Defendant Buehnerkemper that each of the clerks was responsible for her own drawer. At the end of the day, Plaintiff received the money and deposited it, although sometimes Defendant Weiss did so when Plaintiff

was not there.  See Exhibit 10.  These facts would warrant a reasonable person to believe that Plaintiff was the person responsible for the discrepancies.

Plaintiff argues that JIMS would not match the money deposited in the bank account because the accounting was done manually.  Plaintiff also argues that errors were made when money was received by the Clerk's office employees and this could explain the discrepancies between JIMS and the money deposited in the bank and recorded in the manual ledger.  Plaintiff also claims that all the employees in the office had access to the money in the office, JIMS, the manual ledger, and the safe.

However, probable cause does not require certainty or even that it is more likely than not that a crime has been committed.  Hanson v. Dane County, Wis., 608 F.3d 335, 338 (7th Cir. 2010) (the fact that there were other possibilities for why there was no answer when the 911 dispatcher returned an incomplete emergency call did not defeat probable cause).  Moreover, '[a] person's ability to explain away seemly damning facts does not negate the existence of probable cause, even though it

might provide a good defense should the case go to trial." <u>Deng v. Sears,</u>
<u>Roebuck & Co.</u>, 552 F.3d 574, 577 (7th Cir. 2009).

The evidence known to Defendant Buehnerkemper supported a
probability or substantial chance that money was missing from the
Circuit Clerk's office and that Plaintiff, as the bookkeeper and the person
responsible for the manual ledger, was the person responsible.  <u>See</u>
<u>Purvis</u>, 614 F.3d at 722-23 (probable cause requires only a probability or
substantial chance of criminal activity).  The Court finds this sufficient to
support probable cause for Plaintiff's arrest for theft.

Because the Court finds probable cause existed for Plaintiff's arrest,
the Court need not address whether Defendant Weiss acted under color
of law following her retirement, whether Defendant Weiss caused or
participated in the alleged constitutional deprivation, whether Defendant
Weiss, as a private party, conspired with state actors, whether Plaintiff is
collaterally estopped from denying the existence of probable cause
because she waived her preliminary hearing, or whether Defendant
Buehnerkemper is entitled to qualified immunity.

B.   The Court Declines to Exercise Supplemental Jurisdiction Over Count III, the State Malicious Prosecution Claim

In Count III, Plaintiff brought a state law claim for malicious prosecution.  Because the federal claim has been dismissed, the Court must determine whether to maintain supplemental jurisdiction over Plaintiff's state law claim.

A district court should relinquish jurisdiction over pendent state-law claims unless: "(1) the state law claims may not be re-filed because a statute of limitations has expired, (2) substantial judicial resources have been expended on the state law claims, or (3) it is clearly apparent how the state law claims are to be decided."  Dargis v. Sheahan, 526 F.3d 981, 990 (7th Cir. 2008).

First, the running of the statute of limitations would not bar Plaintiff from filing her suit in state court because 735 ILCS 5/13-217 gives plaintiffs one year to file their claim in state court after dismissal by the federal court.  Second, this Court dismissed the federal claims on summary judgment.  While judicial resources have been expended on the state law claims, substantial judicial resources have not been expended because the Court is not addressing the state law claims on summary

Page 32 of 48

judgment.  Finally, it is not absolutely clear how the state law claims will be decided, particularly in light of the numerous state law immunity issues raised by Defendants.  See, e.g., Davis v. Cook County, 534 F.3d 650, 654 (7th Cir. 2008) (finding that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction because the statute of limitations did not bar filing the claim in state court, the court "disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case" and it was not "absolutely clear" how the state law claim would be decided). Therefore, in an exercise of discretion, this Court declines to exercise supplements jurisdiction over Plaintiff's state-law malicious prosecution claim.

## V. SANCTIONS

On March 21, 2013, Defendant Weiss filed a Motion for Sanctions Under Rule 11 and 28 U.S.C. § 1927.[2]  Defendant Weiss asserts that

---

[2] Plaintiff asserts that Defendant Weiss did not file the request for sanctions under Rule 11 within a reasonable amount of time.  However, Defendant Weiss filed the Motion within two months of Plaintiff's deposition, which purportedly contradicted the allegations in the Amended Complaint.  The Court finds this a reasonable period of time.  See, e.g., Sullivan v. Hunt, 350 F.3d 664, 666 (7th Cir. 2003) (noting that a

Plaintiff's Amended Complaint contained new allegations to support her loosely pled conspiracy theory that Defendant Weiss initiated a campaign of discrimination against Plaintiff to prevent her from running for Circuit Clerk.  However, in January 2013 when Plaintiff testified at her deposition, she purportedly testified contrary to the allegations in her Amended Complaint.

Defendant Weiss asserts that Plaintiff's counsel violated both the "frivolous clause" and the "improper purpose clause" of Rule 11 when he added the factual allegations to support a weak conspiracy theory against Defendant Weiss without making a reasonable inquiry into the facts or conduct a sufficient pre-filing investigation of the facts.  Defendant Weiss further asserts that § 1927 imposes a continuing duty on attorneys to dismiss claims that are no longer viable.

On February 27, 2013, Defendant Weiss served the motion, memorandum of law, and a letter on Plaintiff's counsel.  Plaintiff had until March 21, 2013 to withdraw her Amended Complaint but did not do so.  Defendant Weiss asks this Court to order Plaintiff and/or her

Rule 11 sanction motion should be brought as soon as possible after discovery of a Rule 11 violation).

attorney to reimburse Defendant Weiss for the costs and attorneys' fees incurred in bringing the motion and in continuing the litigation, order Plaintiff and/or her attorney to pay a monetary penalty designed to deter future improper behavior, and for any further relief that the Court deems just.

Plaintiff responds that each of the statements contested by Defendant Weiss is supported in full by the record.  Plaintiff's counsel reviewed thousands of pages of documents from Plaintiff's former criminal defense attorney, interviewed material witnesses, and conducted further investigation prior to filing the original Complaint.  See Plaintiff's Response, p. 22 (d/e 81).

A.    Decision on Sanctions is Within the Court's Discretion

"Rule 11 authorizes a district court to impose sanctions on lawyers or parties (or both) for submissions that are filed for an improper purpose or without a reasonable investigation of the facts and law necessary to support their claims."  Senese v. Chicago Area I.B. of T. Pension Fund, 237 F.3d 819, 823-24 (7th Cir. 2001), citing Fed.R.Civ.P. 11(b), (c).  Imposition of sanctions for a Rule 11 violation is

discretionary.  <u>Matter of Generes</u>, 69 F.3d 821, 827 (7th Cir. 1995); <u>see also</u> Fed.R.Civ.P. 11(c) (providing that if a court determines that Rule 11 has been violated, "the court <u>may</u> impose an appropriate sanction") (emphasis added).

Sanctions may be awarded under 28 U.S.C. § 1927 where an attorney has multiplied the proceedings in a vexatious and unreasonable manner.  28 U.S.C. § 1927; <u>see also</u> <u>Dal Pozzo v. Basic Mach. Co., Inc.</u>, 463 F.3d 609, 614 (7th Cir. 2006).  An award of sanctions under § 1927 requires a finding of either subjective or objective bad faith.  <u>Dal Pozzo</u>, 463 F.3d at 614 (noting that objective bad faith means reckless indifference); <u>see also</u> <u>Webster v. Hilex Poly Co. LLC</u>, 2008 WL 5235975, at *2 (S. D. Ind. 2008) ("Vexatious has been interpreted to mean either subjective or objective bad faith").  "The purpose of § 1927 'is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them.'"  <u>Riddle & Assocs., P.C. v. Kelly</u>, 414 F.3d 832, 835 (7th Cir.2005) (quoting <u>Kapco Mfg. Co. v. C & O Enters., Inc.</u>, 886 F.2d 1485, 1491 (7th Cir. 1989)); <u>see also</u> <u>Overnite Transp. Co. v. Chicago Indus. Tire Co.</u>, 697

F.2d 789, 794 (7th Cir. 1983) (the purpose of § 1927 is to sanction

attorneys who "needlessly delay <u>ongoing</u> litigation") (emphasis in

original).  Whether to award sanctions pursuant to § 1927 is within the

Court's discretion.  <u>Jolly Group, Ltd. v. Medline Indus., Inc.</u>, 435 F.3d

717, 720 (7th Cir. 2006).

B.     Sanctions Are Not Warranted Under Rule 11

Defendant Weiss argues that Plaintiff's counsel violated Rule 11

when he filed an Amended Complaint containing allegations he knew or

should have known lacked evidentiary support.  <u>See</u> Fed.R.Civ.P.

11(b)(3) (by presenting a pleading to the court, the attorney certifies

that the factual contentions have evidentiary support).  In particular,

Defendant Weiss claims that Plaintiff's deposition testimony contradicts

several material allegations in the Amended Complaint.

Defendant Weiss also argues that Plaintiff's counsel violated the

"improper purposes" prong of Rule 11 because he did not make a

reasonable inquiry into the facts or conduct a sufficient pre-filing

investigation of the facts before filing the Amended Complaint.  <u>See</u>

Fed.R.Civ.P. 11(b)(1) (by presenting a pleading to the court, the

attorney certifies that the pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

"The focus in Rule 11 sanctions is on what counsel knew at the time the complaint was filed, not what subsequently was revealed in discovery." Corley v. Rosewood Care Center, Inc. of Peoria, 388 F.3d 990, 1014 (7th Cir. 2004). However, the fact that discovery unearthed certain facts is relevant because '[i]f discovery is necessary to establish a claim, then it is not unreasonable to file a complaint so as to obtain the right to conduct that discovery." Kraemer v. Grant County, 892 F.2d 686, 690 (7th Cir. 1990).

Plaintiff's theory against Defendant Weiss for the period after Weiss' retirement was that Weiss acted together with other state actors to deprive Plaintiff of her constitutional rights. A private party is liable under § 1983 when she conspires or is jointly engaged with state actors to deprive a person of her constitutional rights. Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7, 570 F.3d 811, 815 (7th Cir. 2009). To establish § 1983 liability through a conspiracy theory, a

plaintiff must establish that "(1) the private individual and a state official reached an understanding to deprive the plaintiff of her constitutional rights and (2) the private individual was a willful participate in joint activity with the state or its agents."  Hanania v. Loren-Maltese, 212 F.3d 353, 356 (7th Cir. 2000).

Proving a conspiracy is difficult.  See Kraemer, 892 F.2d at 689 ("We cannot require an attorney to procure a confession of participation in a conspiracy from one of the prospective defendants before filing suit").  Moreover, as stated by the Seventh Circuit in Samuels v. Wilder:

> Rule 11 draws a "fine line.  Rule 11 must not bar the courthouse door to people who have some support for a complaint but need discovery to prove their case, yet the need for discovery does not excuse the filing of a vacuous complaint." In light of Hartmarx [(Cooter & Gell v. Hartmarx Corp., 496 U.S. 384)(1990)] the responsibility for patrolling that line rests with the district judges. Although defendants maintain that plaintiffs knew enough before filing to appreciate that they were doomed to lose-that their pre-filing investigation was too thorough for their own good-the district court was not bound to agree. Its decision was not an abuse of discretion.

Samuels v. Wilder, 906 F.2d 272, 274 (7th Cir. 1990), quoting Frantz v. United States Powerlifting Federation; 836 F.2d 1063, 1068 (7th Cir. 1987.

1.   <u>Allegations Regarding Defendant Weiss' Motives</u>

Plaintiff made the following allegations in the Amended Complaint

regarding Defendant Weiss' motives:

> Mrs. Stevens told fellow employees that she had [an] interest
> in a candidacy for County [sic] Clerk of DeWitt County in
> the next election.
>
> Defendant Weiss' actions in causing Mrs. Stevens to be
> terminated from her employment, arrested, imprisoned and
> prosecuted were motivated by a desire to prevent Mrs.
> Stevens from running for and possibly becoming Circuit Clerk
> of DeWitt County.  It can be reasonably inferred that her
> actions were also intended to shift blame for the potential
> political embarrassment spurring from improperly kept books
> in the County Clerk's office.

Amd. Compl. ¶¶ 10, 42 (d/e 30).  Defendant Weiss asserts that Plaintiff

contradicted these allegations when she testified at her deposition that

she never told Defendant Weiss or Plaintiff's coworkers in the Circuit

Clerk's office about her intention to run for Circuit Clerk.

At her deposition, Plaintiff was asked about her allegation in the

Amended Complaint that she told fellow employees about her intention

to run for Circuit Clerk.  Plaintiff testified that she believed she told

Mindy Sears or Ruth Lowers at the courthouse and that she might have

mentioned it to Betty Runyon in the Clerk's office.  Stevens Dep., p. 84-

86.  As the deposition transcript shows, Plaintiff did not contradict her allegation in paragraph 10 that she told fellow employees she had an interest in running for Circuit Clerk

Moreover, Plaintiff points to evidence—which appears to have been known to Plaintiff prior to filing suit—that supported her theory of Defendant Weiss' motivation for her actions as alleged in paragraph 42: the timing of Defendant Weiss' announcement of her retirement coincided with Plaintiff's termination; Defendant Weiss' friendship with and support for the candidacy of Lori Berger; and Defendant Weiss continuing to work in the Circuit Clerk's office after her retirement. Therefore, the Court finds Plaintiff's counsel did not violate Rule 11 when he filed these allegations in the Amended Complaint.

2.    <u>Allegations Pertaining to Weiss' Involvement in a Conspiracy</u>

Defendant Weiss next claims that Plaintiff's counsel violated Rule 11 when he added the following allegations to Amended Complaint without making a reasonable inquiry into the facts or conducting a sufficient pre-filing investigation of the facts:

Weiss . . . maintained involvement in the investigation from its earliest stages and Weiss was in constant contact with Killian throughout it.  Amd. Compl. ¶ 11.

Koritz made the decision to bring charges and/or continue the prosecution, and this was done with the knowledge and consent of all Defendants.  Amd. Compl. ¶ 27.

Defendant DeWitt County's decision to terminate the employment of Mrs. Stevens, arrest, imprison and prosecute her were made by Defendants Weiss, Koritz and Killian.  All mentioned Defendants were personally involved in said decision and actions which served to deprive Mrs. Stevens of her constitutional rights.  Amd. Compl. ¶ 43.

Defendants Weiss, Koritz and Killian had the final policy-making authority to undertake the termination, arrest, imprisonment, and/or prosecution of Mrs. Stevens and thereby deprived her of her constitutional rights.  Amd. Compl. ¶ 44.

Defendants perpetuated a policy, custom and practice of charging, arresting and prosecuting individuals without probable cause to do so.  Further, the constitutional injury to Mrs. Stevens was caused by Defendants, all of whom by their elected or appointed positions were people with final policy-making authority.  Amd. Compl. ¶ 46.

At all times, Defendant DeWitt County and all Defendant in their official capacities and [] under their policy-making authority acted by custom, policy and practice to deny Stevens' Constitutional rights.  Amd. Compl. ¶ 55.

At her deposition, Plaintiff was asked what involvement Defendant Weiss maintained in the investigation.  Plaintiff testified that she: (1) did

not know the extent of Defendant Weiss' involvement in the investigation other than being interviewed three times by the Illinois State Police; (2) thought it was fair to assume Defendant Weiss maintained contact with Killian because the Circuit Clerk's office worked closely with the State's Attorney's Office; (3) assumed Defendant Weiss knew the investigation was being done, that Weiss would have been told that Plaintiff was arrested, and that Weiss would have had personal knowledge of Plaintiff's arrest because the Circuit Clerk's office would have received the documentation and Weiss volunteered her time in the Circuit Clerk's office almost daily; (4) did not have any knowledge whether Weiss was involved in the prosecution of Plaintiff' case; (5) was not aware of any involvement by Weiss in Plaintiff's arrest; (6) had no knowledge that Weiss was working with the other Defendants to have Plaintiff arrested; (7) knew Defendant Weiss did not have the authority to arrest Plaintiff, lock her up in the jail, or file criminal charges against Plaintiff.  Stevens Dep. pp. p. 92-94, 103-104, 106-107, 109, 116-117.

Plaintiff's testimony is not contrary to most of those allegations. Plaintiff testified as to having some knowledge about Defendant Weiss

maintaining involvement in the investigation, including being interviewed, having contact with the State's Attorney's office, and having knowledge of the paperwork coming into the office because she worked there after her retirement.  Moreover, the fact that Plaintiff testified that Defendant Weiss did not have the authority to arrest Plaintiff, lock her up in jail, or file criminal charges against her does not necessarily mean Defendant Weiss could not be liable under a conspiracy theory.

The Court finds that Plaintiff's counsel did not file these allegations when he knew, or should have known, they lacked evidentiary support. Although Plaintiff may not have had personal knowledge of some of the allegations, her counsel reviewed thousands of documents before filing suit.  Moreover, counsel was able to, through discovery, uncover some evidence that could have supported her claims, which suggests that it was not unreasonable for counsel to file a complaint to obtain the right to conduct discovery.  See Kraemer, 892 F.2d at 686.

C.      Sanctions Are Not Warranted Under 28 U.S.C. § 1927 or Rule 11
        Because Plaintiff's Counsel Did Not File the Suit or Continue to
        Litigate the Case for an Improper Purpose

Defendant Weiss also argues that Plaintiff's counsel violated 28

U.S.C. § 1927 and Rule 11 when he filed an Amended Complaint for

improper purposes and continued to litigate the case.  See Senese, 237

F.3d at  826 ("Rule 11 may be violated when, even if the claims are well

based on fact and law, parties or their attorneys bring the action for an

improper purpose"); Dal Pozzo v. Basic Mach. Co., Inc., 463 F.3d 609,

614 (7th Cir. 2006).

Plaintiff's counsel deposed seven additional witnesses after Plaintiff

was deposed.  Defendant Weiss argues that, by doing so, Plaintiff's

counsel prolonged the proceedings and increased the costs of litigation.

According to Defendant Weiss, Plaintiff's counsel's actions were

objectively unreasonable because Plaintiff herself testified to the lack of a

factual basis for her suit against Defendant Weiss.

As noted above, Plaintiff's theory of the case against Defendant

Weiss was that she conspired with the other state actors to deprive

Plaintiff of her constitutional rights.  While Plaintiff herself had little

knowledge of the facts to support such a theory, that does not mean that

she brought and continued the litigation for an improper purpose.

Evidence to support such a theory existed from other sources, and

additional information was uncovered through discovery.  The Court,

however, did not reach the conspiracy issue on the Motions for Summary

Judgment and expresses no opinion on the sufficiency of Plaintiff's

evidence.  Nonetheless, sanctions are not warranted here for the reasons

stated above.  The Court finds no evidence that Plaintiff's counsel

brought the claim for an improper purpose or unreasonably continued to

litigate the case.

D.     Plaintiff's Motion for Sanctions Against Defendant Weiss is Denied

In her response to Defendant Weiss' Motion for Sanctions,

Plaintiff sought sanctions against Defendant Weiss.  Plaintiff asserts that

a frivolous motion for sanctions is sanctionable.  Plaintiff sent a letter to

Defendant Weiss' counsel on March 21, 2013, disputing the allegations

in the Motion and stating that Plaintiff would request sanctions against

Defendant for her frivolous motion.  Pl. Response, p. 30 (d/e 81).

To the extent Plaintiff brings her "motion" under Rule 11, the "motion" does not comply with Rule 11(c)(2)'s requirement that the motion for sanctions be made separate from any other motion. Fed.R.Civ.P. 11(c)(2); see also Divane v. Krull Elec. Co., Inc., 200 F.3d 1020, 1030 (7th Cir. 1999) (sanctions must be initiated by motion).

If Plaintiff is bringing the motion under § 1927, the Court finds that Defendant Weiss' counsel did not multiply the proceedings in a vexatious and unreasonable manner or bring the Motion for an improper purpose. Although Defendant Weiss was unsuccessful on her motion for sanctions, the Court finds no evidence of subjective or objective bad faith. See, e.g., Walter v. Fiorenzo, 840 F.2d 427, 436 (7th Cir. 1988) (stating that "sanctions are not automatically warranted where a party loses a dispositive motion").

## VI.  CONCLUSION

For the reasons stated, the Motions for Summary Judgment filed by Defendant Ryan Buehnerkemper (d/e 59) and Defendant Kathy Weiss (d/e 66) are GRANTED IN PART.  Defendants are entitled to summary judgment on Plaintiff's claims for false arrest and false imprisonment

(Counts I and II).  The Court declines to exercise supplemental

jurisdiction over Plaintiff's state law malicious prosecution claim (Count

III).  Count III is DISMISSED WITHOUT PREJUDICE.  Defendant

Weiss' Motion for Sanctions (d/e 55) and Plaintiff's request for sanctions

made in her response to Defendant Weiss' Motion for Sanctions are both

DENIED.  CASE CLOSED.

ENTER:  September 4, 2013

FOR THE COURT:

                         s/Sue E Myerscough
                         SUE E. MYERSCOUGH
                         UNITED STATES DISTRICT JUDGE